IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER PONZINI, ESQUIRE and :
MIRYEM BARBAROS, as :
Co-Administrators of the Estate of :
MUMUN BARBAROS, deceased :
                    Plaintiffs, :
        v. :
                                      :
                                      :    JURY TRIAL DEMANDED
MONROE COUNTY :
and :
WARDEN DONNA M. ASURE :
and :
RICH CUTH, Director of Treatment :    NO. 3:11-cv-0413
and :
CAPTIAN GEORGE KUMBURIS, :
Chief of Security :
and :
CORRECTIONAL OFFICER JESSE :
CLEARE :
and :
CORRECTIONAL OFFICER :
JAMES PARKER :
and :
CORRECTIONAL OFFICER :
ROBERT OVERFIELD :
and :
CORRECTIONAL OFFICER :
GARY MOWERY :
and :
CORRECTIONAL OFFICER :
NORMA L. ELMORE :
and :
CORRECTIONAL OFFICER :
ERIN DEVERS :
and :
SERGEANT HAIDLE :
and :
PRIMECARE MEDICAL, INC. :
and :
DR. ALEX THOMAS :
and :
Dr. WILLIAM BUFFTON :
and :

**DR. DEBORAH WILSON**                        :
and                                           :
**CHRISTINA ROWE**                            :
and                                           :
**PATRICIA BAUER**                            :
and                                           :
**WENDY JOHNSON**                             :
and                                           :
**C. ROVE**                                   :
and                                           :
**PAUL S. JAMES**                             :
and                                           :
**NURSE GRACE RAMOS**                         :
and                                           :
**JOHN DOE, PSS**                             :
and                                           :
**JOHN DOE I**                                :
and                                           :
**JOHN DOE II**                               :
and                                           :
**JOHN DOE III**                              :
and                                           :
**JOHN DOE IV**                               :
and                                           :
**JOHN DOE V**                                :
                       **Defendants.**        :

## AMENDED COMPLAINT

Plaintiffs Peter Ponzini and Miryem Barbaros, as Co-Administrators of the Estate of

Mumun Barbaros ("Mr. Barbaros"), deceased ("plaintiffs"), by and through their attorneys, Gay

Chacker & Mittin, P.C., hereby assert the following Amended Complaint against defendants,

Monroe County ("Monroe County"), Warden Donna M. Asure,  Rich Cuth, Captain George

Kumburis, Correctional Officer Jesse Cleare, Correctional Officer James Parker, Correctional

Officer Robert Overfield, Correctional Officer Gary Mowery, Correctional Officer Norma L.

Elmore, Correctional Officer Erin Devers, Sergeant Haidle (collectively "correctional officer

defendants"), and PrimeCare Medical, Inc. ("PrimeCare"), Dr. Alex Thomas, Dr. William

2

Buffton, Dr. Deborah Wilson, Christina Rowe, Nurse Patricia Bauer, Wendy Johnson, C. Rove, Paul S. James, Nurse Grace Ramos (collectively "medical defendants"), and John Doe, PSS and John Does I-V (all defendants collectively "defendants") as follows:

<u>**Parties**</u>

1.      Plaintiffs are the Co-Administrators of the Estate of Mumun Barbaros, deceased. Miryem Barbaros ("Ms. Barbaros") is the wife of Mr. Barbaros.  Mr. Barbaros at all material times a resident of Monroe County, Pennsylvania.

2.      Defendant Monroe County is a Municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs, controls and oversees the Monroe County Correctional Facility, located at 4250 Manor Drive, Stroudsburg, PA  18360.

3.      At all times relevant hereto, Monroe County employed Warden Donna M. Asure, Rich Cuth, Captain George Kumburis, Correctional Officer Jesse Cleare, Correctional Officer James Parker, Correctional Officer Robert Overfield, Correctional Officer Gary Mowery, Correctional Officer Norma L. Elmore, Correctional Officer Erin Devers, Sergeant Haidle.

4.      Throughout this Amended Complaint, Warden Donna M. Asure, Rich Cuth, Captain George Kumburis, Correctional Officer Jesse Cleare, Correctional Officer James Parker, Correctional Officer Robert Overfield, Correctional Officer Gary Mowery, Correctional Officer Norma L. Elmore, Correctional Officer Erin Devers, Sergeant Haidle collectively shall be referred to as the "correctional officer defendants".

5.      Defendant Warden Donna M. Asure was at all times relevant to this action an agent of Monroe County.

6.      Defendant Rich Cuth was at all times relevant to this action an agent of Monroe County and the Director of Treatment at Monroe County Correctional Facility ("MCCF").

7.      Defendant Captain George Kumburis was at all times relevant to this action a Captain and Chief of Security of the MCCF and an agent of Monroe County. He is being sued in his individual capacity as a Captain and Chief of Security at MCCF.

8.      Defendant Correctional Officer Jesse Cleare was at all times relevant to this action a correctional officer at MCCF and an agent of Monroe County. He is being sued in his individual capacity as an officer of the MCCF and Monroe County.

9.      Defendant Correctional Officer James Parker was at all times relevant to this action a correctional officer at MCCF and an agent of Monroe County. He is being sued in his individual capacity as an officer of the MCCF and Monroe County.

10.      Defendant Correctional Officer Robert Overfield was at all times relevant to this action a correctional officer at MCCF and an agent of Monroe County. He is being sued in his individual capacity as an officer of the MCCF and Monroe County.

11.      Defendant Correctional Officer Gary Mowery was at all times relevant to this action a correctional officer at MCCF and an agent of Monroe County. He is being sued in his individual capacity as an officer of the MCCF and Monroe County.

12.      Defendant Correctional Officer Norma L. Elmore was at all times relevant to this action a correctional officer at MCCF and an agent of Monroe County. She is being sued in her individual capacity as an officer of the MCCF and Monroe County.

13.      Defendant Correctional Officer Erin Devers was at all times relevant to this action a correctional officer at MCCF and an agent of Monroe County. She is being sued in her individual capacity as an officer of the MCCF and Monroe County.

14.      Defendant Sergeant Haidle was at all times relevant to this action a correctional officer at MCCF and an agent of Monroe County. He is being sued in his individual capacity as

4

an officer of the MCCF and Monroe County.

15.     Defendant PrimeCare is a Pennsylvania corporation with its principal place of business located at 3940 Locust Lane, Harrisburgh, PA.  At all times relevant hereto, PrimeCare was the contracted agent of MCCF and Monroe County, and was responsible for providing staff and overseeing medical treatment to inmates at MCCF.  At all times material hereto, PrimeCare acted and failed to act by, through and on behalf of its duly authorized agents, ostensible agents, servants and employees, including, but not limited to, Dr. Alex Thomas, Dr. William Buffton, Dr. Deborah Wilson, Christina Rowe, Nurse Patricia Bauer, Wendy Johnson, C. Rove, Paul S. James, Nurse Grace Ramos, and John Doe, PSS (collectively "medical defendants" or "PrimeCare defendants").

16.     Defendant Dr. Alex Thomas is a duly licensed physician practicing at MCCF in Stroudsburg, PA.

17.     At all times material hereto, defendant Dr. Alex Thomas was a treating physician of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

18.     Defendant Dr. William Buffton is a duly licensed physician practicing at MCCF in Stroudsburg, PA.

19.     At all times material hereto, defendant Dr. Buffton was a treating physician of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

20.     Defendant Dr. Deborah Wilson is a duly licensed physician practicing at MCCF in Stroudsburg, PA.

21.     At all times material hereto, defendant Dr. Deborah Wilson was a treating

physician of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

22.     Defendant Christina Rowe is a duly licensed nurse and/or social worker practicing at MCCF in Stroudsburg, PA.

23.     At all times material hereto, defendant Christina Rowe was a treating nurse and/or social worker of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

24.     Defendant Nurse Patricia Bauer is a duly licensed nurse practicing at MCCF in Stroudsburg, PA

25.     At all times material hereto, defendant Nurse Patricia Bauer was a treating nurse of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

26.     Defendant Wendy Johnson is a duly licensed nurse and/or social worker practicing at MCCF in Stroudsburg, PA

27.     At all times material hereto, defendant Wendy Johnson was a treating nurse and/or social worker of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

28.     Defendant C. Rove is a duly licensed nurse and/or social worker practicing at MCCF in Stroudsburg, PA

29.     At all times material hereto, defendant C. Rove was a treating nurse and/or social worker of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

30.     Defendant Paul S. James is a duly licensed nurse and/or social worker practicing

6

at MCCF in Stroudsburg, PA

31.    At all times material hereto, defendant Paul S. James was a treating nurse and/or social worker of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

32.    Defendant Nurse Grace Ramos is a duly licensed nurse practicing at MCCF in Stroudsburg, PA

33.    At all times material hereto, defendant Nurse Grace Ramos was a treating nurse of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

34.    Defendant John Doe, PSS, is a duly licensed PSS practicing at MCCF in Stroudsburg, PA.  Defendant John Doe, PSS, can be identified by the signature set forth on the document attached to the original complaint marked as Exhibit "A".

35.    At all times material hereto, defendant John Doe, PSS, was a treating PSS of Mr. Barbaros, acting individually and/or as an agent, ostensible agent, servant and/or employee of Monroe County and PrimeCare.

36.    Defendants John Does I-V are licensed medical providers practicing at MCCF in Stroudsburg, PA and/or correctional officers at MCCF.  The medical providers can be identified by their signatures which are contained on the documents attached to the original complaint marked as Exhibit "B".

### Jurisdiction

37.    This action is brought pursuant to 42 United States Code Section 1983. Jurisdiction is based upon 28 United States Code 1331, 1341 (1), (3) and (4), and 1343(a)(3), and 1343(a)(4).  Plaintiffs further invoke the supplemental jurisdiction under 28 United States Code

7

Section 1376(a) to hear and decide claims under state law.

## Facts

38.    The term "defendants" in this Amended Complaint refers to all defendants named in this action collectively.

39.    On March 18, 2009, Mr. Barbaros was admitted to MCCF following an arrest for a number of alleged crimes.

40.    At the time of his intake, defendants conducted any intake interview.

41.    At the time of the intake interview, Mr. Barbaros advised defendants that he took Paxil and Trazodone on a daily basis.

42.    Mr. Barbaros was noted to have psychological issues which included among other things, depression and the conditions that are associated with major depression.

43.    Mr. Barbaros also advised defendants that his doctor, Dr. Katz had prescribed the medications and that he filled the prescription at a CVS in Mt. Home.

44.    From the time that he entered MCCF on March 18, 2009 through the evening of March 20, 2009, despite repeated request to the medical defendants and the correctional officer defendants, Mr. Barbaros was denied his Paxil and Trazodone.

45.    On March 20, 2009, during his arraignment, Mr. Barbaros complained to the Judge John Whitesell that he had not been receiving his medication since his incarceration.

46.    Judge Whitesell asked the police officers escorting him back to MCCF to relay Mr. Barbaros' concerns.

47.    Upon information and belief, the police officers escorting Mr. Barbaros back to MCCF complied with the Judge's request and relayed the need for Mr. Barbaros to receive his Paxil and Trazodone.

8

48.     Defendants failed to provide Mr. Barbaros with his Trazodone medication from the time he entered MCCF until the evening of March 20, 2009.

49.     Defendants failed to provide Mr. Barbaros with his Paxil medication from the time he entered MCCF until the morning of March 21, 2009.

50.     Paxil is a drug with a short half-life and leaves a user's system very quickly.

51.     Among the withdrawal symptoms of Paxil are worsening of underlying anxiety or depression, headache, tremor or "shakes", gastrointestinal distress and fatigue, all of which were present in Mr. Barbaros during his incarceration.

52.     Suicidal thoughts are common withdrawal symptoms as well.

53.     Despite the fact that defendants were aware of Mr. Barbaros' condition, including his withdrawal from Paxil, he was not placed on suicide watch or seen by any of the medical defendants until March 20, 2009.

54.     Even after being seen for a psychiatric evaluation, Mr. Barbaros was not placed on suicide watch, nor provided any special psychiatric care.

55.     Medical defendants and the correctional officer defendants were aware that persons who present with the symptoms being displayed by Mr. Barbaros require prompt and specialized medical care and attention.

56.     Further all defendants, including the medical defendants and the correctional officer defendants, were aware that someone who suffers from major depression and has been denied medication such as Paxil, poses a suicide risk.

57.     Defendants observed Mr. Barbaros' deteriorating condition and were aware that he was at a substantially increased risk of suicide because of his deteriorating condition.

9

58.    Despite the symptoms presented by Mr. Barbaros, Monroe County, and/or Primecare and/or the medical defendants and/or the correctional officer defendants failed to undertake prompt and appropriate medical care and attention and/or failed to ensure that prompt and appropriate medical care and attention was provided to Mr. Barbaros. Instead, Mr. Barbaros was put on Lopressor for high blood pressure and days passed before the medication he needed was provided to him. Further, he was not given a psychiatric evaluation until March 20, 2009.

59.    The above was done with the knowledge of Monroe County, the correctional officer defendants, PrimeCare and the medical defendants.

60.    Notwithstanding the need for immediate medical care and attention, all defendants failed to provide Mr. Barbaros with follow-up care and/or medication for an extended period, causing Mr. Barbaros to suffer further injury and harm, and ultimately, his death.

61.    The failure of Monroe County, Primecare and the medical defendants to provide prompt and appropriate medical care and attention caused Mr. Barbaros' symptoms to worsen and resulted in severe injury and harm, and ultimately, his death.

62.    The failure of Monroe County and the correctional officer defendants to ensure that proper medical treatment and attention was provided to Mr. Barbaros and that he was properly monitored as they observed his symptoms worsening despite knowing that suicide was a serious risk under the circumstances caused Mr. Barbaros' symptoms to worsen and resulted in severe injury and harm, and ultimately, his death.

63.    Between March 18, 2009 and March 22, 2009, on several occasions, Mr. Barbaros advised Monroe County, the correctional officer defendants, PrimeCare and the medical defendants of the fact that his symptoms had worsened, that he needed his medication, and that he had the shakes, his heart was racing, and that he was having stomach issues, among other

things, thus alerting any reasonably correctional officer, Warden, Director of Treatment, and trained medical professional of the need for immediate medical care and possible need for a detailed psychological evaluation and suicide watch.

64.     At no time between March 18, 2009 and March 22, did any of the defendants, or any other employees of defendants Monroe County or PrimeCare, take steps to ensure that Mr. Barbaros received necessary medical care and attention for withdrawal symptoms.

65.     At no time between March 18, 2009 and March 22, did any of the defendants, or any other employees of defendants Monroe County or PrimeCare, take steps to ensure that Mr. Barbaros was placed on a suicide watch.

66.     Between March 18, 2009, and March 22, 2009, Monroe County, the correctional officer defendants, PrimeCare and the medical defendants were on notice of Mr. Barbaros' need for immediate medical attention and, with deliberate indifference, failed to take steps to ensure that he received the necessary care and treatment with a psychiatric specialist.

67.     Between March 18, 2009, and March 22, 2009, Monroe County, the correctional officer defendants, PrimeCare and the medical defendants were on notice of Mr. Barbaros' need for observation while in his cell and, with deliberate indifference, failed to take steps to ensure that he received the necessary observation.

68.     On the evening of March 21, 2009, while Mr. Barbaros still was not on any suicide watch, the inmate in the cell next to him was.

69.     Throughout that evening and into the early morning on March 22, 2009, defendant Cleare was expected to pass by Mr. Barbaros' cell every 15 minutes to check on the inmate on the cell next to his.

70.     Defendant Cleare failed to fulfill his responsibilities, but falsified documents and

made numerous misrepresentations that he had done so.

71.    Mr. Barbaros killed himself by swallowing shreds of his own t-shirt.

72.    Upon information and belief, the other correctional officer defendants were aware that defendant Cleare was not making his rounds and helped him to cover up his actions.

73.    Had defendant Cleare and the other correctional officer defendants fulfilled their responsibilities, they would have observed Mr. Barbaros taking his own life and been in a position to stop him.

74.    Upon information and belief, the remaining correctional officer defendants knew that defendant Cleare was not performing the required observations every 15 minutes on March 21, 2009 and March 22, 2009 and did nothing to correct his failure.

75.    The other correctional officers, in light of their knowledge of defendant's Cleare's actions (or inaction), made a conscious decision not to do anything to correct defendant Cleare's failure to act, essentially approving of his shirking required responsibilities.

76.    Each correctional officer defendant had a responsibility to ensure that their fellow officers fulfilled their responsibilities.

77.    The other correctional officer defendants failed to do so in this case.

78.    Indeed, the other correctional officer defendants failed to ensure that defendant Cleare fulfilled his responsibilities on March 21 and 22, 2009 and stood idly by while defendant Cleare failed to fulfill his responsibilities.

79.    Upon information and belief, following Mr. Barbaros' suicide, the other correctional officer defendants were aware that defendant Cleare was covering up his failure to conduct the required 15 minute rounds and assisted in that cover-up through their knowing and intentional failure to speak-up and advise anyone associated with MCCF or Monroe County

about what had occurred.

80.    In light of their knowledge and/or observation of Mr. Barbaros' condition and the need for immediate treatment with a psychiatric specialist, and in accordance with generally accepted standards of medical care, all medical defendants should have taken steps to ensure that Mr. Barbaros receive the necessary care and attention with a psychiatric specialist.

81.    In light of their knowledge and/or observation of Mr. Barbaros' deteriorating condition, the need for immediate treatment with a psychiatric specialist, and the risk of suicide associated therewith, and in accordance with generally accepted standards, Monroe County and the correctional officer defendants should have taken steps to ensure that Mr. Barbaros was placed on a suicide watch and that he receive the necessary care and attention with a psychiatric specialist.

82.    At all times relevant to this Complaint, defendants Monroe County and PrimeCare, with deliberate indifference, failed to develop and implement policies, practices, and procedures to ensure that Mr. Barbaros would receive proper follow-up care, psychiatric intervention and be placed on suicide watch.

83.    The harms suffered by Mr. Barbaros are the direct and proximate result of the policy, practice, and custom of defendants Monroe County and PrimeCare, of refusing or delaying inmates' necessary treatment with medical specialists, or otherwise interfering with such treatment and the placement of inmates on suicide watch.

84.    Defendants Monroe County and PrimeCare failed to take steps to ensure that information regarding inmates such as Mr. Barbaros – including but not limited to the inmates' reports of injuries, the results of examinations and tests, and the diagnoses of disorders – were promptly communicated to the inmates' other medical and mental health providers working in

MCCF as well as correctional officers and administrators so that medical services and placement on suicide watch were coordinated in such a way as to have avoided the harms sustained by Mr. Barbaros.

85.    At all times relevant to this Complaint, all defendants were deliberately indifferent to the serious medical needs of Mr. Barbaros.

86.    At all times relevant to the Complaint, the conduct of all defendants, their agents, servants and/or employees, was intentional, willful, reckless, and grossly negligent with respect to Mr. Barbaros' rights under federal and state law.

87.    As a direct and proximate result of defendants' conduct, Mr. Barbaros suffered substantial damages, including pain and suffering, embarrassment, emotional distress, loss of the enjoyment of life, and ultimately death.

88.    As a direct result of the failure of the Monroe County, PrimeCare, the correctional officer defendants, and the medical defendants to diagnose, treat or react in any way to Mr. Barbaros' psychiatric condition, Mr. Barbaros developed severe withdrawal symptoms and ultimately suffocated himself using shreds of his t-shirt.

89.    Without any regard for Mr. Barbaros' safety, defendants ignored Mr. Barbaros' medical condition and denied him medical treatment that he desperately needed

90.    Without any regard for Mr. Barbaros' safety, defendants ignored Mr. Barbaros' medical condition and failed to place him on a suicide watch despite knowing that there was a real and substantial risk of suicide.

91.    Defendants failed to protect Mr. Barbaros and knowingly failed to provide him with medical treatment that he desperately needed.

92.    The correctional officer defendants showed deliberate indifference to Mr.

Barbaros when they failed to conduct the cell check of his neighboring inmate every 15 minutes on the night that he committed suicide and then attempted to cover their failure through misrepresentations and falsification of records.

93.    As a direct and proximate result of the defendants' actions, Mr. Barbaros was deprived of rights, privileges and immunities under the Fourth, Fifth, Eight and Fourteenth Amendments to the United States Constitution and in particular the right to be free from cruel and unusual punishment, the right to be provided proper and adequate medical treatment and the right to due process of law.

**COUNT ONE**
**Plaintiff v. Correctional Officer Defendants and Medical Defendants**
**Federal Constitutional Claims**

94.    Plaintiffs hereby incorporate the allegations contained in paragraphs 1 through 93, inclusive, of their Complaint as if the same were set forth at length herein.

95.    The correctional officer defendants and medical defendants, as well as John Doe, PSS, and John Does I-V were deliberately indifferent to Mr. Barbaros' serious medical needs and thereby violated Mr. Barbaros' right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or Mr. Barbaros' right to due process of law under the Fourteenth Amendment to the United States Constitution.

96.    As a direct result of the actions and inactions of these defendants, Mr. Barbaros suffered the harms set forth above, including, but not limited to severe Paxil withdrawal symptoms and ultimately death.

**COUNT TWO**
**Plaintiff v. Correctional Officer Defendants and Medical Defendants**
**Supplemental Claims**

97.    Plaintiffs hereby incorporate the allegations contained in paragraphs 1 through 96,

inclusive, of their Complaint as if the same were set forth at length herein.

98.    The correctional officer defendants and medical defendants intentionally inflicted emotional distress upon Mr. Barbaros.

99.    The correctional officer defendants, acting in concert and conspiracy, committed acts in violation of Mr. Barbaros' Constitutional Rights and against the laws of Pennsylvania. The correctional officer defendants made statements among themselves and others in order to conceal their unlawful and unconstitutional conduct and in an attempt to deny Mr. Barbaros' access to the courts and to due process and to cover-up the wrongful cruel and unusual punishment to which Mr. Barbaros was submitted and to cover-up the deliberate indifference which was shown to Mr. Barbaros.

100.    Correctional officer defendants performed overt acts in furtherance of the conspiracy.

101.    As a result of the above actions, Mr. Barbaros suffered the damages as set forth in this Complaint.

## COUNT THREE
### Plaintiff v. Defendants Monroe County and PrimeCare
### Federal Constitutional Claims

102.    Plaintiffs hereby incorporate the allegations contained in paragraphs 1 through 101, inclusive, of their Complaint as if the same were set forth at length herein.

103.    As a direct and proximate result of all defendants' conduct, committed under color of state law, and the deliberate indifference of defendants Monroe County and PrimeCare to Mr. Barbaros' serious medical needs, Mr. Barbaros was denied the right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution and/or to due process of law under the Fourteenth Amendment to the United States Constitution.  As a

result, Mr. Barbaros suffered harm in violation of his rights under the laws and Constitution of the United States, in particular the Eighth and Fourteenth Amendments, and 42 U.S.C. §1983.

104.    The violations of Mr. Barbaros' constitutional rights, Mr. Barbaros' damages, and the conduct of the individual defendants were directly and proximately caused by the deliberate indifference of Monroe County and Primecare to the need for training, supervision, investigation, monitoring, or discipline with respect to the provision of specialized medical care to inmates.

105.    The violations of Mr. Barbaros' constitutional rights, Mr. Barbaros' damages, and the conduct of the individual defendants were directly and proximately caused by the encouragement, tolerance, ratification of, and/or deliberate indifference of Monroe County PrimeCare to, policies, practices, and/or customs of refusing, delaying, failing to coordinate, or otherwise interfering with inmates' necessary treatment with medical specialists.

106.    The violations of Mr. Barbaros' constitutional rights, Mr. Barbaros' damages, and the conduct of the individual defendants were directly and proximately caused by the failure of Monroe County and PrimeCare, with deliberate indifference, to develop and implement policies, practices, and procedures to ensure that inmates receive proper follow-up medical care or medical care from medical specialists and to ensure that inmates are placed on a suicide watch when necessary.

107.    As a direct result of the actions and inactions of these defendants, Mr. Barbaros suffered the harms set forth above, including, but not limited to severe Paxil withdrawal symptoms and ultimately death.

## COUNT FOUR
### Plaintiff v. Medical Defendants, Primecare and Monroe County
### <u>State Law Negligence Claims</u>

108.    Plaintiffs hereby incorporate the allegations contained in paragraphs 1 through

107, inclusive, of their Complaint as if the same were set forth at length herein.

109.    The medical defendants had a duty to comply with generally accepted medical standards of care in their treatment of Mr. Barbaros.

110.    The medical defendants violated their duty of care to Mr. Barbaros.

111.    The medical defendants' violations of their duty of care to plaintiff was a direct and proximate cause and a substantial factor in bringing about Mr. Barbaros' damages outlined above, and, as a result, the medical defendants are liable to plaintiff.

112.     As the individual medical defendants were acting as agents, servants, and/or employees of Monroe County and/or PrimeCare, and were acting within the scope and course of their employment, and under the direct control and supervision of Monroe County and/or PrimeCare, Monroe County and Primecare are liable to plaintiff on the basis of *respondeat superior* liability.

**COUNT FIVE**
**Plaintiff v. Defendants**
**<u>Wrongful Death</u>**

113.    Plaintiffs hereby incorporate by reference the allegations contain in paragraphs 1 through 112, inclusive, of their Complaint, as if the same were set forth in full herein.

114.     As a result of the aforesaid negligent acts and/or omissions of defendants resulting in Mr. Barbaros' death, Mr. Barbaros' survivors have suffered damages for pecuniary loss including but not limited to the following:

    a.   funeral, burial and estate administrative expenses;

    b.   medical expenses; and

    c.   such other pecuniary losses recoverable under the Wrongful Death Act and applicable Pennsylvania law.

115.    As a result of the aforesaid negligent acts and/or omissions of defendants resulting in Mr. Barbaros' death, Mr. Barbaros' survivors have suffered, and will continue to suffer for an indefinite time in the future, and claim damages for losses including but not limited to the following:

    a.   loss of the pecuniary value of the services, society, comfort, companionship, maintenance, guidance, tutelage, moral upbringing, support, protection and enjoyment which decedent would have provided for the remainder of decedent's natural life; and

    b.   such other pecuniary contributions the survivors could have expected to receive from the decedent and were caused to lose as a direct and proximate result of defendants negligence and carelessness; and

    c.   such other losses recoverable under applicable Pennsylvania law.

116.    On behalf of the Wrongful Death beneficiaries, the Administrators claim damages for the monetary support the decedent would have provided to the beneficiaries during his lifetime.

**COUNT SIX**
**Plaintiff v. Defendants**
**Survival Action**

117.    Plaintiffs hereby incorporate by reference the allegations contain in paragraphs 1 through 116, inclusive, of their Complaint, as if the same were set forth in full herein.

118.    Plaintiffs claim damages for the pain and mental suffering undergone by Mr. Barbaros prior to his death, and the loss of earning capacity suffered by Mr. Barbaros from the time of his injury until such time as he probably would have lived had he not died as a result of the defendants' negligence as described above.

119.    Plaintiffs bring this action on behalf of the Estate of Mumun Barbaro, deceased, pursuant to the Pennsylvania Survival Act, 42 Pa.C.S.A. Section 8302 and claims all damages

encompassed thereby on behalf of said Estate.

## REQUESTED RELIEF

Wherefore, Plaintiffs respectfully request:

1. Compensatory damages;

2. Punitive damages against the individual defendants and PrimeCare;

3. Reasonable attorneys' fees and costs;

4. Such other and further relief as may appear just and appropriate.

5. Plaintiff hereby demands a jury trial as to each count and each defendant.


EDWARD F. CHACKER, ESQUIRE
BRIAN S. CHACKER, ESQUIRE
GAY CHACKER & MITTIN, P.C.
1731 Spring Garden Street
Philadelphia, PA  19130
(215) 567-7955
fax: (215) 567-6809
bchacker@gaychackermittin.net

**Attorneys for Plaintiff**
**Peter A. Ponzini and Miryem Barbaros, as Co-**
**Administrators of the**
**Estate of Mumun Barbaros, deceased**

Date:   June 23, 2011

## CERTIFICATE OF SERVICE

I, Brian S. Chacker, Esquire, hereby certify that a true and correct copy of the foregoing

Plaintiff's Amended Complaint Pursuant To Fed. R. Civ. P. 12(B)6 was served this 23rd day of

June, 2011, by the ECF electronic filing system and by United States first class mail, postage

prepaid, upon the following:

Thomas E. Brenner, Esquire
Goldberg Katzman, PC
P.O. Box 1268
Harrisburg, PA  17108
**Attorneys for Defendants**
**PrimeCare Medical, Inc., Dr. Deborah Wilson Christina Rowe, Wendy Johnson, Paul**
**James, Grace Ramos and Patricia Bauer**

John R. Hill, Esquire
The Perry Law Firm, LLC
531 Main Street, Suite 102
Bethlehem, PA  19018
**Attorneys for Defendant**
**Dr. Alex Thomas**

Gerard J. Geiger, Esquire
Newman, Williams, Mishkin, Corveleyn, Wolfe & Fareri
712 Monroe Street
Stroudsburg, PA 18360
**Attorneys for Defendant**
**Monroe County**

Michael J. Donohue, Esquire
Kreder, Brooks, Hailstone & Ludwig
220 Penn Avenue, Suite 200
Scranton, PA  18501
**Attorneys for Defendant**
**Jesse Cleare**

_____
Brian S. Chacker, Esquire

21