**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| PETER PONZINI, ESQUIRE and MIRYEM BARBAROS, as Co-Administrators of the Estate of Mumun Barbaros, Deceased, Plaintiffs | NO. 3:11-CV-413 |
| v. | JUDGE JAMES M. MUNLEY |
| MONROE COUNTY, MONROE COUNTY CORRECTIONAL FACILITY, WARDEN DONNA M. ASURE, RICH CUTH, Director of Treatment, CAPTAIN GEORGE KUMBURIS, Chief of Security, CO JESSE CLEARE, CO JAMES PARKER, CO ROBERT OVERFIELD, CO GARY MOWRY, CO NORMA L. ELMORE, CO ERIN DEVERS, SERGEANT HAIDLE, PRIMECARE MEDICAL, INC., DR. ALEX THOMAS, DR. WILLIAM BUFFTON, DR. DEBORAH WILSON, CHRISTINA ROWE, PATRICIA BAUER, WENDY JOHNSON, PAUL S. JAMES, NURSE GRACE RAMOS, JOHN DOE I-V | *ELECTRONICALLY FILED*<br><br>CIVIL ACTION – LAW |

**BRIEF OF DEFENDANTS PRIMECARE MEDICAL, INC., DR. DEBORAH WILSON, CHRISTINA ROWE, WENDY JOHNSON, PAUL S. JAMES, GRACE RAMOS, AND PATRICIA BAUER IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT PURSUANT TO F.R.C.P. 12(B)(6)**

**I.   Procedural History**

This is a prisoner lawsuit which arises from Plaintiff's incarceration in the Monroe County Prison. On March 3, 2011, Plaintiffs commenced this action by filing a Complaint. (Document 1.) After several of the Defendants filed Motions to Dismiss, Plaintiffs filed an Amended Complaint on June 23, 2011. (Document 43.)

## II. Statement of Facts

Plaintiff began his incarceration at the Monroe County Prison on March 18, 2009. (Document 43 ¶ 39.) At the time of his intake interview, Plaintiff disclosed that he took Paxil and Trazodone on a daily basis. (Document 43 ¶ 41.)

Plaintiff was seen by medical personnel on March 20, 2009. (Document 43 ¶ 53.) On that same date, Plaintiff underwent a psychiatric evaluation. (Document 43 ¶ 58.) Plaintiff was provided with prescription Trazodone on March 20, 2009. (Document 43 ¶ 48.) Plaintiff was provided with prescription Paxil on March 21, 2009. (Document 43 ¶ 49.) Finally, Plaintiff was provided with Lopressor for high blood pressure. (Document 43 ¶ 58.)

## III. Statement of Questions Involved

A. Should this Court dismiss Plaintiffs' claims for medical negligence because Plaintiffs failed to file Certificates of Merit pursuant to Pa.R.C.P. 1042.3?

(Suggested Answer: Yes)

B. Should this Court dismiss Plaintiffs' §1983 claims because Plaintiffs have failed to demonstrate moving Defendants acted with deliberate indifference?

(Suggested Answer: Yes)

C. Should this Court dismiss Plaintiffs' claim for Intentional Infliction of Emotional Distress where Plaintiffs' have failed to plead facts sufficient to make out a prima facie case of IIED?

(Suggested Answer: Yes)

D. Should this Court dismiss Plaintiff's claims against PrimeCare regarding its policies and training where Plaintiffs have failed to meet the requirements to make out such a case?

(Suggested Answer: Yes)

### IV. Argument

Plaintiffs have filed this action pursuant to 42 U.S.C. § 1983 and claims their decedent's 8th and 14th Amendment rights were violated. A motion to dismiss, pursuant to F.R.C.P. 12(b)(6), may be granted if, accepting all well-pleaded allegations in the complaint as true and viewing them in a light most favorable to the plaintiff, the plaintiff is not entitled to relief. See, Nami v. Fauber, 82 F.3rd 63, 65, (3rd Cir. 1996); Holder v. City of Allentown, 987 F.2d 188, 194 (3rd Cir. 1993). A plaintiff's complaint should be dismissed whenever it appears that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. See, Jenkins v. McKeithen, 395 U.S. 411 (1969), rehearing denied, 396 U.S. 869; Conley v. Gibson, 455 U.S. 41 (1957); Graves v. Lowery, 117 F.3rd 723, 726 (3rd Cir. 1997).

### A. Certificate of Merit

Rule 1042.3(a) requires that in an action "based upon an allegation that a licensed professional deviated from an acceptable professional standard" the plaintiff must file a Certificate of Merit within sixty (60) days after filing the complaint. The Rule 1042.3 certificate must certify that either: (1) an appropriate licensed professional has supplied a written statement that there exists a reasonable probability that the care . . . that is the subject of the complaint fell outside acceptable professional standards and was a cause in bringing about the harm; or, (2) the claim that the defendant deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard; or, (3) expert testimony of an appropriate licensed professional is unnecessary. . . . Furthermore, Rule 1052.3(b)(1) provides that a separate certificate shall be filed as to **each** licensed professional against whom a claim is asserted. (emphasis added)

Pennsylvania's federal courts have recognized that Rule 1042.3 is substantive law and should be applied by federal courts regardless of whether jurisdiction is premised on diversity or the state law claims are pendent.  See, Schwalm v. Allstate Boiler & Construction, 2005 U.S. Dist. LEXIS 12422, 2005 WL 1322740 *1 (M.D. Pa. May 17, 2005)(Caputo, J.); Scaramuzza v. Sciolla, 345 F. Supp.2d 508, 509-10 (E.D. Pa. 2004); Lopez v. Brady, Civil No. 4:CV-07-1126, 2008 U.S. Dist. LEXIS 43797, at *18 (M.D. Pa. June 3, 2008)(McClure, J.); see, also, Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (recognizing that New Jersey statute requiring the filing of an affidavit of merit in professional malpractice cases was substantive state law); Abdulhay v. Bethlehem Medical Arts, 2005 U.S. Dist. LEXIS 21785, 2005 WL 2416012 * 3 (E.D. Pa. Sept. 27, 2005) (finding that Rule 1042.3 was substantive law and that under Erie Railroad v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188, (1938), federal courts must apply it to state law claims arising under pendent jurisdiction)

Furthermore, Plaintiff's incarceration or pro se status is not a viable basis upon which to excuse non-compliance with Rule 1042.3.  See, Perez v. Griffin, 2008 U.S. Dist. LEXIS 45240, 2008 WL 2383072 *3 (M.D. Pa. June 9, 2008).  Finally, defendant is not required to assert prejudice to prevail on dismissal pursuant to Pa.R.C.P 1042.3.  See, Hartman v. LSCI-Allenwood, 2005 U.S. Dist. LEXIS 40766, 2005 WL 1259950 *4 (M.D. Pa. May 27, 2005), (Judge Caputo found that prejudice was immaterial to a Rule 1042.3 inquiry).

In the instant matter, Plaintiffs failed to file Certificates of Merit as required by the Pennsylvania Rules of Civil Procedure and moving Defendants are entitled to dismissal of all professional negligence claims.  Pa.R.C.P. 1042.3 requires that Plaintiffs file a Certificate of Merit within sixty days of the filing of their Complaint.  In this case, Plaintiffs filed their Original Complaint on March 3, 2011 and their Amended Complaint on June 23, 2011.  To date, well after the passage of sixty days, Plaintiffs have failed to file Certificates of Merit.

4

Additionally, Plaintiffs must file a Certificate of Merit as to each licensed professional in the case, of which there are at least four. Plaintiffs have not filed a single Certificate of Merit. Accordingly, moving Defendants are entitled to the dismissal of all of Plaintiffs' professional negligence claims pursuant to the remedy provided in Pa. R.C.P. 1042.6 and the applicable case law in this circuit.

### B. §1983 Claims

The United States Supreme Court espoused the standard necessary to establish a claim for a violation of the Eighth Amendment law of cruel and unusual punishment in the context of medical care in <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976). The standard established in <u>Estelle</u> has two prongs: (1) It requires deliberate indifference on the part of the prison officials; and (2) it requires the prisoner's medical needs to be serious. <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976); <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2nd 326, 346 (3rd Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). Deliberate indifference is more than inadvertence or a good faith error. It is characterized by "obduracy and wantonness." <u>Whitley v. Albers</u>, 475 U.S. 312 (1986).

Negligent misdiagnosis or an inadvertent failure to provide care does not establish a Constitutional violation. <u>Estelle</u>, at 97.

"The courts will not intervene upon allegation of mere negligence, mistake or difference of opinion . . . For a Constitutional tort to arise and for a cause of action to be stated under Section 1983, the complainant must allege deliberate indifference to his continued health and well-being." <u>Bowring v. Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977). Moreover, there must be proof that the conduct alleged was deliberate and intentional. <u>Hampton v. Holmesburg</u>, 546 F.2d 1077, 1081 (3rd Cir. 1976). There must be the presence of exceptional circumstances amounting to conduct so grossly incompetent, inadequate, or excessive as to shock the general

conscience or to be intolerable to fundamental fairness.  Walnorch v. McMonagle, 412 F. Supp. 270, 274 (E.D. Pa. 1976), *citing* Gittlemacher v. Prasse, 428 F.2d 1 (3rd Cir. 1970).

In the instant matter, Plaintiffs have failed to plead any facts or any behavior attributed to the medical Defendants which evidence the presence of exceptional circumstances amounting to conduct so grossly incompetent, inadequate, or excessive as to shock the general conscience or to be intolerable to fundamental fairness.  The facts pleaded in Plaintiffs' Amended Complaint demonstrate that Plaintiff was in the prison for a total of four days.  While Plaintiffs allege that their decedent did not receive prescription medications immediately upon his incarceration, Plaintiffs stated that he did receive them within two to three days' time.  It is reasonable that the medical defendants did not provide Plaintiffs' decedent with prescription medications until after they had performed medical and psychological evaluations; it would have been inappropriate to provide Plaintiffs' decedent with prescription medications based solely upon the decedent's representations at his intake interview.

Similarly, the medical Defendants performed their medical and psychological evaluations on the decedent in a reasonable amount of time.  Plaintiffs cannot demonstrate that the moving defendants acted with deliberate indifference; merely, Plaintiffs have a difference of opinion as to the length of time in which the decedent should have received medication.  Accordingly, it would be impossible to find that the medical defendants committed any act or omission that amounts to deliberate indifference for Plaintiffs' decedent's medical condition.

### C.     IIED Claim

Plaintiffs' state law claims for Intentional Infliction of Emotional Distress (IIED) should be dismissed because Plaintiffs cannot prove any set of facts in support of their claim which would entitle them to relief under the tort of IIED.

The status of the tort of IIED remains somewhat unsettled in Pennsylvania. <u>Taylor v. Albert Einstein Med. Ctr</u>., 562 Pa. 176, 181 (2000). The Pennsylvania Supreme Court has never formally adopted Section 46 of the Restatement (Second) of Torts, "Outrageous Conduct Causing Severe Emotional Distress." <u>Id</u>. However, the Supreme Court has "cited the section as setting forth the minimum elements necessary to sustain such a cause of action." <u>Id</u>. (citing <u>Kazatsky v. King David Memorial Park</u>, 515 Pa. 183 (1987)). Until the Supreme Court provides clear guidance, the Superior Court has determined that,

> when an intentional infliction of emotional distress claim is dismissed upon demurrer, the appropriate legal standard to be applied in reviewing the claim is whether the complaint sufficiently pleads the claim in a manner that corresponds, "at a minimum," with the provisions of the Restatement (Second) of Torts, § 46(1), Outrageous Conduct Causing Severe Emotional Distress.

<u>Reardon v. Allegheny College</u>, 2007 Pa. Super 160, P38 (2007); *see also* <u>Toney v. Chester County Hosp</u>., 2008 Pa. Super 268, P30 (2008).

Section 46 of the Restatement (Second) of Torts provides:

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

(2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress

(a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or

(b) to any other person who is present at the time, if such distress results in bodily harm.

<u>Taylor</u>, 562 Pa. at 180-181 (quoting Restatement (Second) of Torts § 46).

Further, Pennsylvania case law provides that, for a plaintiff to recover, the Defendant's conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society." Reardon, 2007 Pa. Super. at P38 (quoting Hoy v. Angelone, 720 A.2d 745, 753-754 (Pa. 1998)). "It is for the court to determine, in the first instance, whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery." Strickland v. University of Scranton, 700 A.2d 979, 987 (Pa. Super. 1997) (quoting Reimer v. Tien, 356 Pa. Super. 192, 198-200, 514 A.2d 566, 569 (1986)).

The Supreme Court has noted that recovery for IIED has been allowed in cases with "only the most egregious conduct." Hoy, 720 A.2d at 754. For example, sexual harassment alone is generally not considered outrageous enough to recover for IIED. Id. In Hoy, the Supreme Court held that sexual harassment involving sexual propositions, inappropriate jokes, physical contact at the knee, profanity, and posting of a suggestive picture, although "highly offensive," was not "extremely outrageous." Id. at 755.

In the instant matter, Plaintiffs have failed to plead any facts or any behavior attributed to the moving Defendants which would cause one to exclaim, "Outrageous!" Outrageous conduct is the hallmark of IIED claims in Pennsylvania. Again, the facts pleaded in Plaintiffs' Amended Complaint demonstrate that Plaintiff was in the prison for a total of four days. While Plaintiffs allege that their decedent did not receive prescription medications immediately upon his incarceration, Plaintiffs stated that he did receive them within two to three days' time. It is reasonable that the medical defendants did not provide Plaintiffs' decedent with prescription medications until after they had performed medical and psychological evaluations and cannot be deemed outrageous conduct for the purposes of an IIED claim.

Similarly, the reasonable amount of time in which medical defendants performed their medical and psychological evaluations on the decedent cannot form the basis for a claim of outrageous conduct. Accordingly, it would be impossible to find that the moving defendants committed any act or omission "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in any civilized society." Therefore, this Court should dismiss Plaintiffs' IIED claims.

### D. Policies and Procedures

Corporate medical providers are only held liable for constitutional violations if they had policies or customs that caused constitutional violations. Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-584 (3d Cir. 2003). Not all action rises to the level of a custom or policy. Id at 584. A policy is made when a decision maker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict. Id. A custom is an act, while not approved by a decision maker, that is so widespread as to have the force of law. Id.

According to a recent Eastern District case:

> A plaintiff must present scienter-like evidence of indifference on part of a particular policymaker or policymakers. The requirement of producing scienter-like evidence on the part of an official with policymaking authority is consistent with the conclusion that 'absent the conscious decision or deliberate indifference of some natural person, a municipality, as an abstract entity, cannot be deemed to have engaged in a constitutional violation by virtue of a policy, a custom or failure to train. Plaintiffs bear the burden of showing that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.

Neuen v. Primecare Med., Inc., 2011 U.S. Dist. LEXIS 31182, 26-27 (E.D. Pa. Mar. 24, 2011) (internal citations omitted).

In the instant matter, Plaintiffs have not shown that decedent suffered a Constitutional violation. Accordingly, any claim regarding PrimeCare's policies and procedures must fail. To the extent that Plaintiffs could demonstrate a Constitutional violation, they have failed to identify a particular policymaker, the policy that caused the alleged Constitutional violation and/or a custom that caused the alleged Constitutional violation. Therefore, Plaintiffs claims based on PrimeCare's policies, customs and/or procedures must fail.

Similarly, Plaintiffs' claims based on the training or failure to train PrimeCare's employees must also fail.

> A § 1983 plaintiff pressing a claim of this kind must identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can reasonably be said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur. In a prison suicide case, this means that the plaintiff must (1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred, and (2) must demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives.

Colburn v. Upper Darby Township, 946 F.2d 1017, 1030 (3d Cir. Pa. 1991).

In the instant matter, Plaintiffs' Amended Complaint has not identified any specific training that PrimeCare did not provide that could have been expected to prevent decedent's suicide. The Amended Complaint refers merely to "the need for training, supervision, investigation. . . ." (Document 43 ¶ 104) Because Plaintiffs have failed to identify any specific training, they have similarly failed to demonstrate any risk reduction as required by the second prong of the test above. Therefore, Plaintiffs have utterly failed to make out a failure to train claim and the same should be dismissed.

## V. Conclusion

Based on all the arguments above, this Court should grant moving Defendants' Motion to Dismiss.

Respectfully submitted,

JOHNSON, DUFFIE, STEWART & WEIDNER

By: s/John R. Ninosky
John R. Ninosky, Esquire
Attorney I.D. No. 78000
301 Market Street ~P. O. Box 109
Lemoyne, PA 17043-0109
Telephone (717) 761-4540
Email: jrn@jdsw.com

Date: July 13, 2011       Attorney for PrimeCare Medical Defendant
449504

11

**CERTIFICATE OF SERVICE**

I hereby certify on the 13th day of July, 2011, that the foregoing *Brief in Support of PrimeCare Defendants' Motion to Dismiss* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Brian S. Chacker, Esquire
Gay, Chacker & Mittin
1731 Spring Garden Street
Philadelphia, PA 19130-3915
bchacker@gaychackermittin.net
*Counsel for Plaintiffs*

Gerard J. Geiger
Newman, Williams, Mishkin, Corveleyn,
 Wolfe & Fareri
712 Monroe Street
Stroudsburg, PA 18360
ggeiger@newmanwilliams.com
*Counsel for Monroe County Defendants*

John R. Hill, Esquire
The Perry Law Firm, LLC
531 Main Street, Suite 102
Bethlehem, PA 18018
jrh@theperrylawfirm.com
*Counsel for Dr. Alex Thomas*

Michael J. Donohue, Esquire
Kreder, Brooks, Hailstone & Ludwig
220 Penn Avenue, Suite 200
Scranton, PA 18501
mdonohue@khb-law.com
*Counsel for Defendant Jesse Cleare*

JOHNSON, DUFFIE, STEWART & WEIDNER

By: s/John R. Ninosky
 John R. Ninosky