## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PETER PONZINI, et al.** | : |
| **Plaintiffs** | : |
| **v.** | :     **3:11-cv-0413** |
| | :     **(JUDGE MARIANI)** |
| **MONROE COUNTY, et al.** | : |
| **Defendants** | : |

## MEMORANDUM OPINION

Presently before the Court are: (1) a Motion to Dismiss by Defendant Alex T.

Thomas ("Thomas") (Doc. 47); (2) a Motion to Dismiss by Defendants PrimeCare Medical,

Inc., Dr. Deborah Wilson, Christina Rowe, Wendy Johnson, Paul S. James, Grace Ramos,

and Patrica Bauer (collectively, "Medical Defendants") (Doc. 50); and (3) and a Motion for

Judgment on the Pleadings by Defendant Jesse Cleare (Doc. 59).  For the reasons set

forth below, both Motions to Dismiss (Docs. 47 and 50) will be denied, but Jesse Cleare's

Motion for Judgment on the Pleadings (Doc. 59) will be granted.

## JURISDICTION

This matter is properly before the Court based upon federal question jurisdiction

pursuant to 28 U.S.C. § 1331, while the state law claims are properly before the Court

pursuant to its supplemental jurisdiction.

## BACKGROUND

The Court will accept as true all of the well-pleaded facts in Plaintiffs' Complaint, drawing all reasonable inferences in favor of Plaintiffs as the non-moving parties. The pertinent facts are as follows:

Plaintiffs, the co-administrators of the Estate of Mumun Barbaros ("Decedent"), filed an initial Complaint in this matter on March 3, 2011 (Doc. 1). On June 23, 2011, Plaintiffs filed an Amended Complaint, to which several defendants filed the pending motions to dismiss and the motion for judgment on the pleadings.

In their Amended Complaint, Plaintiffs allege that on March 18, 2009, Decedent was admitted to the Monroe County Correctional Facility ("MCCF") "following his arrest for a number of alleged crimes." (Pls.' Am. Compl. at ¶ 39, ECF Dkt. 43.) "At the time of [Decedent's] intake, [D]efendants conducted an intake interview." (Pls.' Am. Compl. at ¶ 40.) Plaintiffs allege that Decedent advised Defendants during his intake interview that he "took Paxil and Trazodone on a daily basis." (Pls.' Am. Compl. at ¶ 41.) Plaintiffs aver that Decedent was "noted to have psychological issues which included among other things, depression and the conditions that are associated with major depression." (Pls.' Am. Compl. at ¶ 42.)

Plaintiffs maintain that "[f]rom the time he entered MCCF on March 18, 2009 through the evening of March 20, 2009, despite repeated request (sic) to the medical defendants and the correctional officer defendants, [Decedent] was denied his Paxil and Trazodone."

2

(Pls.' Am. Compl. at ¶ 44.)  Plaintiffs assert that "[o]n March 20, 2009, during his arraignment, Decedent complained to Judge John Whitesell that he had not been receiving his medication since his incarceration."  (Pls.' Am. Compl. at ¶ 45.)  The Complaint avers that "Judge Whitesell asked the police officers escorting [Decedent] back to MCCF to relay Decedent's concerns."  (Pls.' Am. Compl. at ¶ 46.)  The Complaint further avers that "Defendants failed to provide Decedent with his Trazodone medication from the time he entered MCCF until the evening of March 20, 2009."  (Pls.' Am. Compl. at ¶ 48.)  Plaintiffs also state that "Defendant failed to provide Decedent with his Paxil medication from the time he entered MCCF until the morning of March 21, 2009."  (Pls.' Am. Compl. at ¶ 49.)

Plaintiffs assert that Paxil is a drug with a "short half-life and leaves a user's system very quickly," and that its withdrawal symptoms include "worsening of underlying anxiety or depression, headache, tremor or 'shakes', gastrointestinal distress and fatigue, all of which were present in Decedent during his incarceration."  (Pls.' Am. Compl. at ¶¶ 50-51.)  "Suicidal thoughts are common withdrawal symptoms as well."  (Pls.' Am. Compl. at ¶ 52.)  Plaintiffs maintain that "[d]espite the fact that [D]efendants were aware of [Decedent's] condition, including his withdrawal from Paxil, he was not placed on suicide watch or seen by any of the medical defendants until March 20, 2009."  (Pls.' Am. Comp. at ¶ 53.)  "Even after being seen for a psychiatric evaluation, [Decedent] was not placed on suicide watch, nor provided any special psychiatric care."  (Pls.'s Am. Compl. at ¶ 54.)

Plaintiffs also assert that Defendants "were aware that persons who present with the symptoms being displayed by [Decedent] require prompt and specialized medical care and attention." (Pls.' Am. Compl. at ¶ 55.) "Further all [D]efendants, including the medical defendants and the correctional officer defendants, were aware that someone who suffers from major depression and has been denied medication such as Paxil, poses a suicide risk." (Pls.' Am. Compl. at ¶ 56.) Plaintiffs also aver that "Defendants observed [Decedent's] deteriorating condition and were aware he was at a substantially increased risk of suicide because of his deteriorating condition." (Pls.' Am. Compl. at ¶ 57.) "At no time between March 18, 2009 and March 22, did any of the [D]efendants, or any other employees of Defendants Monroe County or PrimeCare, take steps to ensure that [Decedent] received necessary medical care and attention for withdrawal symptoms." (Pls. Am. Compl. at ¶ 64.) Plaintiffs maintain that during the period in which Decedent was incarcerated at MCCF they were aware that he should have been monitored closely and placed on suicide watch. (See Pls.' Am. Compl. at ¶ 67.) Plaintiffs assert that although Decedent was not on suicide watch, they insist that the inmate housed in an adjacent cell was on such a watch, and that Defendant Cleare was expected to pass the neighboring cell, and by virtue of its location, the Decendent's cell, every fifteen minutes. (See Pls.' Am. Compl. at ¶¶ 68-69.) Plaintiffs aver that Defendant Cleare falsified documents demonstrating that he properly made his rounds every fifteen minutes, and that Defendant Cleare's failure to properly maintain a suicide watch on Decedent's neighbor facilitated Decedent's own suicide. (See Pls.' Am.

4

Compl. at ¶¶ 68-70.) Decedent "killed himself by swallowing shreds of his own t-shirt." (Pls.' Am. Compl. at ¶ 71.)

Plaintiffs allege that Defendants were "deliberately indifferent" to Decedent's serious medical needs. (*See* Pls.' Am. Compl. at ¶ 85.) Plaintiffs assert six separate causes of action, two federal and four state: (counts 1 and 3) cruel and unusual punishment under the Eighth Amendment and/or due process violations under the Fourteenth Amendment; (count 2) intentional infliction of emotional distress; (count 4) medical malpractice; (count 5) wrongful death; and (count 6) a survival action pursuant to the Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302.

## **STANDARD**

These matters are presented to the district court as both motions to dismiss and a motion for judgment on the pleadings. In light of the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 433 (2007), and Ashcroft *v. Iqbal*, 129 S.Ct. 1937 (2009), the Middle District of Pennsylvania has adopted the following standard by which to treat motions to dismiss. "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (*citing Twombly*, 550 U.S. at 570). In *Iqbal*, the Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950. Furthermore, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial

5

experience and common sense." *Id.* (citation omitted); *McTernan v. City of York*, 577 F.3d 521, 530 (3d Cir. 2009).

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts, as asserted, establish a "plausible claim for relief." *Iqbal*, 129 S.Ct. at 1950. Thus, a complaint must "show" an entitlement to relief with facts, as a mere allegation that a plaintiff is entitled to relief is insufficient to withstand a motion to dismiss. *See Philips v. Co. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949.

Similarly, judgment on the pleadings will "not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005)(citing *Soc'y YHill Civil Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)). The Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.*

6

## DISCUSSION

Defendants filed two Motions to Dismiss and a Motion for Judgment on the Pleadings. Each motion will be discussed in turn.

### I.    Motions to Dismiss

The moving Defendants' Motions to Dismiss posit that Plaintiffs have failed to state a claim under 28 U.S.C. § 1983, and that simple claims for medical malpractice should not be turned into claims for constitutional violations "merely because the victim is a prisoner." (See Thomas Br. in Supp. Mot. to Dismiss at 4, ECF Dkt. 47.) The crux of Plaintiffs' Section 1983 claims arise from the allegation that Defendants were deliberately indifferent to Decedent's serious medical needs and thus violated his right to be free from cruel and unusual punishment under the Eighth Amendment and/or violated his due process rights under the Fourteenth Amendment. The contours of the law in this area are well-defined: "While the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is analogous to a prisoner's rights under the Eighth Amendment." *Gray v. City of Detroit*, 399 F.3d 612, 615-616 (6th Cir. 2005)(citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)). At the time of his incarceration, Decedent was a pre-trial detainee; thus, any claim predicated upon Eighth Amendment violations cannot survive as a matter of law. Plaintiffs' argument, however, that Decedent's due process rights under the Fourteenth Amendment were violated remains

7

tenable under this framework. Accordingly, the Court will evaluate Plaintiffs' "Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment." *See Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003). It should be noted, however, that the Court further analyzes the alleged constitutional deprivation in light of the Third Circuit's holding in *Montgomery v. Ray*, 145 F. App'x 738 (3d Cir. 2005), in which the Court found that the Eighth Amendment "only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees." *Id.* at 740. Specifically, this Court must also consider "whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt." *See id.* (citing *Hubbard v. Taylor*, 399 F.3d 150, 158 (3d Cir. 2005)).

A. Plaintiffs' Section 1983 Claim

Both Motions to Dismiss argue that when a prisoner has received medical treatment, courts should be reluctant to second guess the decisions of medical personnel and constitutionalize claims that are otherwise premised upon state tort law. *See United States ex rel. Walker v. Fayette County Pennsylvania*, 599 F.2d 573, 575 n.2 (3d Cir. 1979). "In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a civil rights cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference." *Isley v. Beard*, No. 02-2006, 2009 WL 3199694, at *4 (M.D. Pa. Sept. 29, 2009). The facts presented in Plaintiffs' Complaint,

8

assumed as true for the purpose of deciding this motion, indicate that Decedent was not given a medical evaluation until March 20, 2009, although he arrived at the MCCF on March 18, 2009. Plaintiffs' Complaint further alleges that the types of medication prescribed to Decedent have severe withdrawal symptoms and a "short half-life and leaves a user's system very quickly." (See Pls.' Am. Compl. at ¶¶-52.) Plaintiffs maintain that Defendants behaved in a deliberately indifferent manner when they failed to provide Decedent with medicine to treat depression and other psychological issues. Defendants move to dismiss Plaintiffs' Amended Complaint on the grounds that Plaintiffs' do not sufficiently allege that Decedent was treated with deliberate indifference, and that Plaintiffs' claim for medical malpractice should not be transformed into a constitutional violation.

When Decedent was incarcerated at the MCCF on March 18, 2009, the prison conducted an intake interview in which Decedent informed prison officials that he required Paxil and Trazodone on a daily basis. Plaintiffs allege that prison officials noted that Decedent had psychiatric issues, including major depression. Plaintiffs further allege that Decedent was not provided with Trazodone until the evening of March 20, 2009, and Paxil on the morning of March 21, 2009, despite Decedent's repeated requests to medical and prison officials.

Defendants argue that Decedent was seen by medical staff on multiple occasions, including for a psychological examination, and provided with all necessary medication within 72 hours of incarceration. While it is true that "mere disagreement with [a prison medical

9

staffs'] prescription decision without more, does not state an Eighth Amendment violation,"
*Catchings v. Marrow*, 160 F. App'x 256, 258 (3d Cir. 2005)(internal citations omitted), the
current matter as it is presented to the Court is somewhat different.  Here, Plaintiffs not only
disagree with the medical treatment provided to Decedent, but they allege that it was
wrongfully withheld for non-medical reasons for an unreasonable period given the type of
treatment required.

In order to establish a violation of a detainee's "constitutional right to adequate
medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by
prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582
(citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Plaintiffs' have established that Decedent suffered from psychological conditions,
including major depression, which required daily medication.  The question confronted by
the Court, therefore, is whether the Defendants were deliberately indifferent to Decedent's
serious medical needs.

"Deliberate indifference is a 'subjective standard of liability consistent with
recklessness as the term is defined in criminal law.'" *Natale*, 318 F.3d at 582 (quoting *Nicini
v. Morra*, 212 F.3d 798, 811 (3d Cir. 2000)).  The Supreme Court has held in order to find a
prison official liable for deliberate indifference, Plaintiffs must provide proof that the official
"knows of and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at
582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811

(1994)). The official must be "both [ ] aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and . . . draw the inference." *Natale*,

318 F.3d at 582 (citing *Farmer*, 511 U.S. at 837)). To survive a motion to dismiss on this

issue, Plaintiffs must sufficiently allege facts that tend to prove Defendants are guilty of such

deliberate indifference.

The Third Circuit has found deliberate indifference to exist in cases where there was

"objective evidence that [a] plaintiff had serious need for medical care," and such evidence

was ignored by prison officials. *See Nicini*, 212 F.3d at 815 n. 14. The Third Circuit has

also found deliberate indifference in cases where "necessary medical treatment is delayed

for non-medical reasons." *See Monmouth County Corr. Inst. Inmates v. Landaro*, 834 F.2d

326, 247 (3d Cir. 1987)(citing *Ancata v. Prison Health Servs.*, 769 F.2d 700, 704 (11th Cir.

1985)); *see also Natale*, 318 F.3d at 582-84 (denying defendant's motion for summary

judgment on the grounds that prison officials ignored a prisoner's need for insulin when

evidence on the record indicated that prison officials had knowledge of the prisoner's

diabetic condition).

Plaintiffs' Amended Complaint provides sufficient allegations that Defendants may

have acted with deliberate indifference to the serious medical needs of Decedent. Although

Defendants cite numerous holdings for the proposition that courts should not second guess

the medical treatment provided by prison officials, Plaintiffs' Amended Complaint goes

beyond questioning the provision of specific treatment and raises the possibility that prison

officials knew that Decedent suffered from a severe medical condition and did not attempt to provide appropriate, necessary care in a timely manner. At this preliminary stage, it would be inappropriate for the Court to make any findings of fact or to cast doubt upon any allegations as set forth in Plaintiffs' Amended Complaint. If all facts alleged in Plaintiffs' Amended Complaint are construed in Plaintiffs' favor, Plaintiffs establish a cognizable claim under the Fourteenth Amendment.

Although Defendants are correct in their assertion that medical malpractice is not transformed into a constitutional violation merely because the victim is a prisoner, *see Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and that only unnecessary and wanton pain or deliberate indifference to the serious medical needs of a prisoner rises to the level of a constitutional violation, the Court is unable to discern at this juncture, and under the specific circumstances in this case, whether or not Plaintiffs will be able to ultimately prove their case. In considering a motion to dismiss, however, the Court need only determine whether Plaintiffs' state a viable cause of action based upon the presumptively true facts contained in their pleadings. In the present matter, Plaintiffs meet this initial threshold, and their Section 1983 claim under the Fourteenth Amendment will be permitted to move forward.

## B. Plaintiffs' Provision of a Certificate of Merit

Medical Defendants assert that Plaintiffs have failed to file a proper certificate of merit as required under Pa. R. Civ. P. 1042.3(a). That rule states, in full:

12

In any action based upon an allegation that a licensed professional deviated
from an acceptable professional standard, the attorney for the plaintiff, or the
plaintiff if not represented, shall file with the complaint or within sixty days
after the filing of the complaint, a certificate of merit signed by the attorney or
party that either: (1) an appropriate licensed professional has supplied a
written statement that there exists a reasonable probability that the care, skill
or knowledge exercised or exhibited in the treatment, practice or work that is
the subject of the complaint, fell outside acceptable professional standards
and that such conduct was a cause in bringing about the harm, or (2) the
claim that the defendant deviated from an acceptable professional standard is
based solely on allegations that other licensed professionals for whom this
defendant is responsible deviated from an acceptable professional standard,
or (3) expert testimony of an appropriate licensed professional is unnecessary
for prosecution of the claim.

The Superior Court of Pennsylvania has held that a certificate of merit "must be filed

within sixty days of the original complaint, notwithstanding the filing of preliminary objections

and/or an amended complaint." *Ditch v. Waynesboro Hosp.*, 917 A.2d 317, 326 (Pa. Super.

2007). Defendants assert that Plaintiffs have failed to file any certificate of merit; however,

the record indicates that Plaintiffs filed a certificate of merit concurrently with their original

complaint. (*See* Pls.' Complaint, ECF Dkt. 1.) The certificate of merit filed by Plaintiffs

specifically applies to all Medical Defendants named in Plaintiffs' Complaint. Accordingly,

Medical Defendants' argument that Plaintiffs' medical malpractice claim must be dismissed

for their failure to provide certificates of merit with regard to each named Medical Defendant

fails as a matter of law.

## C. Intentional Infliction of Emotional Distress

Medical Defendants contend that Plaintiffs claim for intentional infliction of emotional

distress ("IIED") must be dismissed because Plaintiffs "cannot prove any set of facts in

13

support of their claim which would entitle them to relief." (*See* Medical Defs.' Br. in Supp.

Mot. to Dismiss, at 6, ECF Dkt. 51.) Although the parties agree that the contours of an IIED

claim are unsettled in Pennsylvania, *see Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650,

652 (Pa. 2000), the Superior Court has held:

> When an intentional infliction of emotional distress claim is dismissed upon
> demurrer, the appropriate legal standard to be applied in reviewing the claim
> is whether the complaint sufficiently pleads the claim in a manner that
> corresponds, "at a minimum," with the provisions of the Restatement
> (Second) of Torts, § 46(1), Outrageous Conduct Causing Severe Emotional
> Distress.

*Reardon v. Allegheny College*, 926 A.2d 477, 487 n. 12 (Pa. Super. 2007).

> Section 46 of the Restatement (Second) of Torts, *inter alia*, holds:

> One who by extreme and outrageous conduct intentionally or recklessly
> causes severe emotional distress to another is subject to liability for such
> emotional distress, and if bodily harm to the other results from it, for such
> bodily harm.

*Taylor*, 754 A.2d at 652 (quoting Restatement (Second) of Torts § 46).

The Superior Court's holding in *Reardon*, *supra*, establishes that to be found liable

for IIED, the defendant's conduct "must be so outrageous in character, and so extreme in

degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in any civilized society." *Reardon*, 926 A.2d at 488 (quoting *Hoy v.

Angelone*, 720 A.2d 745, 753-54 (Pa. 1998)).  Given the nature of the claims Plaintiffs lodge

against Defendants, it would be premature to dismiss the IIED claim at this time, and it is

appropriate to permit Plaintiffs to engage in discovery on this issue.  At this stage, Plaintiffs

14

assert that it is outrageous conduct to have denied Decedent necessary psychiatric medication. Plaintiffs' claim for IIED is adequately pleaded, and supported by sufficient factual allegations, so that it remains a viable claim and should properly proceed to discovery. The Court, however, has serious reservations about the validity of this claim in light of existing state law. We note that the cases in which the courts of Pennsylvania have found a cause of action for IIED truly present what from any vantage point is deliberately extreme and outrageous conduct. *See, e.g., Papieves v. Lawrence*, 263 A.2d 118 (Pa. 1970)(defendant, after striking and killing plaintiff's son with automobile, and after failing to notify authorities or seek medical assistance, buried body in a field where discovered two months later and returned to parents); *Banyas v. Lower Bucks Hosp.*, 437 A.2d 1236 (Pa. Super. Ct. 1981)(defendants intentionally fabricated records to suggest that plaintiff had killed a third party which led to plaintiff being indicted for homicide); *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 (3d Cir. 1979)(defendant's team physician released to press information that plaintiff was suffering from fatal disease, when physician knew such information was false). Nevertheless, at this juncture, we will allow Plaintiffs' cause to proceed while recognizing that the obstacles to such a claim under the case law are indeed formidable.

### D. Policies and Procedures

Medical Defendants assert that "[c]orporate medical providers are only held liable for constitutional violations if they had policies or customs that caused constitutional violations."

15

(*See* Medical Defs.' Br. in Supp. Mot. to Dismiss at 9.)  The Third Circuit's decision in *Natale*

is instructive:

> Not all state action rises to the level of a custom or policy. A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law.

*Natale*, 318 F.3d at 584 (internal citations omitted).

The Third Circuit continued:

> There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."   The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'"

*Natale*, 318 F.3d at 584 (internal citations omitted).

In the present matter, Plaintiffs' Amended Complaint alleges that the individual

defendants violated Decedent's constitutional rights as a result of certain policies, customs,

and procedures promulgated by Monroe County and PrimeCare Medical, Inc.  Plaintiffs

state a cause of action and provide a sufficient factual basis in support thereof.  Specifically,

the Amended Complaint alleges:

16

105. The violations of [Decedent's] constitutional rights, [Decedent's] damages, and the conduct of the individual defendants were directly and proximately caused by the encouragement, tolerance, ratification of, and/or deliberate indifference of Monroe County PrimeCare to, policies, practices, and/or customs of refusing, delaying, failing to coordinate, or otherwise interfering with inmates' necessary treatment with medical specialists.

106. The violations of [Decedent's] constitutional rights, [Decedent's] damages, and the conduct of the individual defendants were directly and proximately caused by the failure of Monroe County and PrimeCare, with deliberate indifference, to develop and implement policies, practices, and procedures to ensure that inmates receive proper follow-up medical care or medical care from medical specialists and to ensure that inmates are placed on suicide watch when necessary.

Pls. Am. Compl. at ¶¶ 106-106.

It is necessary that this issue proceed to discovery because evidence concerning the existence of any improper policies, customs, or procedures will be addressed in the discovery process, and the presence of a dispute of material fact as to such policies or procedures may be determined through a future motion for summary judgment. At the motion to dismiss stage, Plaintiffs need only to state a cause of action in accordance with the standards set forth in *Iqbal* and *Twombly*, and Plaintiffs have again exceeded this threshold. Accordingly, Medical Defendants' motion to dismiss on these grounds will be denied.

II. Motion for Judgment on the Pleadings

Corrections Officer Jesse Cleare ("Cleare") moves to dismiss the claims against him on three separate grounds. He asks whether: (1) Plaintiffs set forth a cause of action under 42 U.S.C. § 1983 when the Amended Complaint admits that Decedent was evaluated by

health care professionals and was treated accordingly; (2) Cleare's failure to observe an inmate in a neighboring cell violated any constitutional right of Decedent; and (3) Cleare is entitled to immunity under 42 Pa. C.S.A. § 8541?

### A. Plaintiffs Section 1983 Claim Against Cleary

The Third Circuit established the standard to be applied by district courts in evaluating prisoner suicide cases in *Colburn v. Upper Darby Twp.*, 838 F.2d 663 (3d Cir. 1988). In that case, the Court held that "if [custodial] officials know or should know of the particular vulnerability to suicide of an inmate, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." *Wargo v. Schuylkill County*, 348 F. App'x 756, 759 (3d Cir. 2009)(citing *Colburn*, 838 F.2d at 669)). The plaintiff therefore has the burden to establish three elements: (1) the detainee had a "particular vulnerability to suicide," (2) the custodial officer knew or should have known of that vulnerability, and (3) those officers "acted with reckless indifference" to the detainee's particular vulnerability. *See Wargo*, 348 F. App'x at 759 (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991)).

The Third Circuit has repeatedly affirmed that "'a prison custodian is not a guarantor of a prisoner's safety,' and therefore the fact that a suicide took place is not enough on its own to establish that prison officials were recklessly indifferent in failing to take reasonable precautions to protect prisoners entrusted to their care." *Wargo*, 348 F. App'x at 759 (quoting *Freedman v. City of Allentown*, 853 F.2d 1111, 1115 (3d Cir. 1988)). In order to

18

show a detainee had a particular vulnerability to suicide, the plaintiff must show that there was "a strong likelihood, rather than a mere possibility, that self-inflicted harm [would] occur." *Wargo,* 348 F. App'x at 759 (quoting *Woloszyn v. County of Lawrence*, 396 F.3d 314, 320 (3d Cir. 2005)). "It is not enough to show that the detainee fits within a category of persons who may be more likely to commit suicide." *Id.* "Instead, in this case, the Estate has the burden of demonstrating that [Decedent] himself had a particular vulnerability to suicide." *Id.*

In the present matter, Plaintiffs have alleged facts which, taken as true, do not support a Section 1983 claim against Cleare. Plaintiffs' Amended Complaint admits that Decedent was examined by prison medical personnel on March 20, 2008. The Amended Complaint also admits that prison medical personnel made the decision to refrain from placing Decedent on suicide watch. Cleare argues that he was not in a position to override the decisions made by the prison medical staff, and that he should not be held accountable for their alleged misjudgments. As the Court noted in *Ellison v. Scheipe*, 570 F. Supp. 1361 (E.D. Pa. 1983), "prison officials cannot be required to second guess the medical judgment of the [staff] physician." *Id.* at 1363. In the present matter, Cleare, who serves as a corrections officer, should not be held responsible for the decisions of medical personnel as to whether Decedent should have been placed on a suicide watch. The Third Circuit's precedent demonstrates that Cleare should not be held responsible for Decedent's suicide because although Decedent may belong to a "category of persons more likely to commit

suicide, that is not enough to establish an individual risk." *Wargo*, 348 F. App'x at 761. As

the Third Circuit noted in *Colburn*, the detainee must have a "particular vulnerability" to

suicide. *See Colburn*, 838 F.2d at 669. Plaintiffs' Amended Complaint, even while granting

every factual inference in their favor, does not establish that Cleare had any reason to know

that Decedent had a "particular vulnerability" to commit suicide. Plaintiffs' Amended

Complaint clearly shows that medical personnel evaluated Decedent, and it is not Cleare's

job, or place, to question the recommendations of medical personnel.

Further, Plaintiffs maintain that Cleare was derelict in his duties when he failed to

routinely inspect the cell of Decedent's neighbor who was placed on suicide watch.

Plaintiffs posit that Cleare's failure to appropriately make his assigned rounds contributed to

Decedent's death because it is likely that the suicide would have been prevented if Cleare

passed the neighboring cell in which Decedent took his own life. Plaintiffs' speculative

argument is misplaced. Deliberate indifference requires that Cleare have subjective

knowledge of a "particular vulnerability" of the Decedent to commit suicide. Although Cleare

likely had such subjective knowledge concerning the vulnerability of Decedent's neighbor,

the Amended Complaint does not adequately allege that Cleare had such knowledge with

regard to Decedent. Cleare had no heightened responsibility to ensure Decedent's safety

because the prison medical staff did not place Decedent on suicide watch and Cleare was

not the guarantor of Decedent's safety. *See Wargo*, 348 F. App'x at 759.

Accordingly, Defendant Jesse Cleare's Motion for Judgment on the Pleadings will be granted.

## **CONCLUSION**

For the reasons set forth in this Memorandum Opinion, Defendants' Motions to Dismiss will be Denied, but Defendant Jesse Cleare's Motion for Judgment on the Pleadings will be Granted.  A separate Order will follow.

DATE: September 19, 2012

Robert D. Mariani
United States District Judge