IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER PONZINI and           :
MIRYEM BARBAROS, as         :
Co-Administrators of the Estate of  :
MUMUN BARBAROS, Deceased,   :
                            :
        Plaintiffs,         :
    v.                      :    3:11-CV-00413
                            :    (JUDGE MARIANI)
MONROE COUNTY, et al.,      :
                            :
        Defendants.         :

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On March 3, 2011, Plaintiffs initiated this action by filing a complaint alleging

violations of 42 U.S.C. § 1983 and Pennsylvania state law. (Doc. 1). Plaintiffs subsequently

filed an Amended Complaint (Doc. 43) on June 23, 2011. Plaintiffs' claims stem from

circumstances surrounding the death of their Decedent, Mumun Barbaros. Barbaros, a

pretrial detainee, committed suicide while incarcerated at the Monroe County Correctional

Facility in March 2009. Plaintiffs allege that Defendant Thomas is liable for Barbaros's death

under Fourteenth Amendment and medical negligence theories. (Doc. 43 at 15, 17-18).

Plaintiffs further allege that Defendant Thomas intentionally inflicted emotional distress on

Barbaros, is liable to his survivors for his wrongful death, and is liable under the

Pennsylvania Survival Act, 42 Pa. C.S.A. § 8302, for Barbaros's alleged pain and suffering

and for his loss of earning capacity. (Doc. 43 at 16, 18-20). By Memorandum (Doc. 64) and Order (Doc. 65) dated September 19, 2012, this Court denied Defendant Thomas's Motion to Dismiss Plaintiffs' Amended Complaint (Doc. 47).

Presently pending before the Court is Defendant Thomas's Motion for Partial Summary Judgment. (Doc. 121). In that motion, Defendant Thomas moved for summary judgment on Count I (a § 1983 deliberate indifference claim) and Count II (a state law intentional infliction of emotional distress claim) of Plaintiffs' Amended Cornplaint (Doc. 43), as well Plaintiffs' requested relief of punitive damages. Also pending before the Court is Defendant Thomas's Supplemental Motion for Summary Judgment (Doc. 157). In the supplemental motion, Defendant Thomas asks the Court to dismiss all claims against him. *Id.* at 3. The Court will consider the motions as one. The parties have briefed the motions and they are ripe for disposition. For the reasons set forth below, the motions will be denied.

## II. FACTUAL BACKGROUND

### A. Statement of Facts

In accordance with Local Rule 56.1, Defendant Thomas has submitted a Statement of Undisputed Material Facts (Doc. 123 and Doc. 159) ("SMF") as to which he submits there is no genuine issue for trial. Plaintiffs subsequently submitted their response to Defendant Thomas's Statement of Material Facts (Doc. 141 and Doc. 170). Except where expressly noted as disputed, the following facts of record are undisputed.

2

Barbaros was incarcerated at the Monroe County Correctional Facility ("MCCF") beginning on March 18, 2009. (SMF, Doc. 123 at ¶1; Answer to SMF, Doc. 141 at ¶1). At the time Barbaros was admitted to MCCF, he was taking the medications Paxil and Trazodone on a daily basis. *Id.* at ¶2. On March 20, 2009, Dr. Thomas received a telephone call regarding Barbaros from a nurse at the prison. *Id.* at ¶3. The nurse informed Thomas that she had verified Barbaros's prescriptions for Paxil and Trazadone. *Id.* at ¶4. Dr. Thomas then ordered both medications. (SMF, Doc. 123 at ¶¶6-7; Answer to SMF, Doc. 141 at ¶6). Both Parties agree that ordering Trazodone and Paxil in response to the nurse's phone call was the first and only involvement Dr. Thomas had in Barbaros's medical treatment. *Id.* at ¶¶3, 7. Before, during, and after the phone call, "Dr. Thomas was not advised about any medical concerns pertaining to Mr. Barbaros."[1] (Doc. 123, SMF at ¶8). Barbaros committed suicide in MCCF on March 22, 2009. (Monroe County Defendants' Statement of Undisputed Material Facts, Doc. 128 at ¶36); Plaintiffs' Response to [Monroe County] Defendants' Statement of Undisputed Material Facts, Doc. 145 at ¶36).[2]

Plaintiffs have put forth one liability expert with respect to Defendant Thomas: Dr. Erik Roskes. (Doc. 159, SMF at ¶3, 5; Answer to SMF at ¶3, 5).

---

[1] Plaintiffs deny this proffered fact as stated. (Answer to SMF, Doc. 141, at ¶8). The Court has reviewed Plaintiffs' response and finds that there is no genuine issue of material fact with respect to this statement. Plaintiffs' only response is a litany of steps that Dr. Thomas could have or should have taken to learn more about Barbaros and his Paxil prescription. *Id.* The fact that he was not advised by another person about any medical concerns with respect to Barbaros at any time is not denied and is not genuinely in dispute.

[2] Defendant Thomas incorporates by reference into his Statement of Undisputed Material Facts the undisputed material facts of his co-defendant, Monroe County. (SMF, Doc. 123 at ¶9). Plaintiffs incorporate by reference their responses to Monroe County's statement of facts. (Answer to SMF, Doc. 141 at ¶9).

## B. Material Facts in Dispute

The material facts that remain in dispute are the following:

In general, the Parties dispute whether Defendant Thomas's actions (or inactions) in this case caused Barbaros's suicide. The Parties also dispute whether or not the expert report and deposition testimony of Dr. Erik Roskes, Plaintiffs' liability expert with respect to Defendant Thomas, are sufficient to establish causation such that Plaintiffs can survive summary judgment on their deliberate indifference and negligence claims. (Brief in Support of Supplemental Motion for Summary Judgment, Doc. 158 at 12-15; Brief in Opposition to Supplemental Motion for Summary Judgment, Doc. 169 at 10-12).

Specifically with respect to Plaintiffs' § 1983 claim, the Parties dispute whether Defendant Thomas had the requisite culpable state of mind to prove a deliberate indifference claim. Plaintiffs have put forth expert opinion evidence that SSRI Discontinuation Syndrome – an aspect of Plaintiffs' theory of causation against Defendant Thomas – was "well characterized" in the psychiatric field by the time of Barbaros's incarceration and death. (Doc. 169, Ex. 3 at 8). On the other hand, Defendant Thomas points to his lack of personal interaction with Barbaros, the single phone call he participated in regarding Barbaros, and the fact that no one advised him at any time of any problems with respect to Barbaros as reasons why his mental state did not rise to the level of deliberate indifference. (Brief in Support of Motion for Partial Summary Judgment, Doc. 122 at 8-9). Relatedly, Parties dispute that Defendant Thomas's mental state or conduct with

4

respect to his treatment of Barbaros meets the requirements for an imposition of punitive damages under Pennsylvania state law. (Doc. 122 at 18; Brief in Opposition to Motion for Partial Summary Judgment, Doc. 140 at 26-27). Specific to the negligence claim, Parties dispute whether Defendant Thomas's treatment of Barbaros fell below the standard of care. (Doc. 158 at 15; Doc. 169 at 9).

## III. STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. Rather, the opposing

5

party must point to a factual dispute requiring trial and the district court "may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030-31 (9th Cir. 2001); *see also* Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912 (1993).

## IV. ANALYSIS

## A. Section 1983 Claim (Count I)

To establish liability under 42 U.S.C. § 1983,[3] a plaintiff must prove that: (1) he was deprived of a federal right; and (2) the person who deprived him of that right acted under color of state law. *Burella v. City of Philadelphia*, 501 F.3d 134, 139 (3d Cir. 2007). Section 1983 is not an independent source of substantive rights, but merely "provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775–76 (3d Cir. 2004). In evaluating a § 1983 claim, a Court must first "identify the exact contours of the underlying right said to have been violated" and determine

---

[3] Section 1983 provides in part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983.

"whether the plaintiff has alleged a deprivation of a constitutional right at all." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)).

## 1. Deprivation of a Federal Right

Here, Plaintiff alleges that Barbaros received inadequate medical care at MCCF. Because Barbaros was a pretrial detainee, as opposed to a convicted prisoner, at the time of his incarceration and death, Plaintiffs allege a deprivation of Barbaros's due process rights under the Fourteenth Amendment. "While the Eighth Amendment prohibits the infliction of cruel and unusual punishment upon prisoners, it applies only 'after [the State] has secured a formal adjudication of guilt in accordance with due process of law.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003) (quoting *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

Plaintiffs correctly point out that the Supreme Court has held that the due process rights of pretrial detainees "are at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere*, 463 U.S. at 244. Plaintiffs go on to critique Defendant Thomas for relying on cases that "deal solely with claims arising under the Eighth Amendment" right to adequate medical care as laid out in *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). (*See* Doc. 140 at 17). Plaintiffs argue that a less stringent standard than that used for claims under the Eighth Amendment should be applied to pretrial detainees. *Id.* at 17-18.

7

While Plaintiffs' points are well-taken, neither the Supreme Court nor the Third Circuit has "yet determined the precise standard that applies to medical-treatment claims when brought by pretrial detainees." *Batts v. Giorla*, 550 F. App'x 110, 113 n.2 (3d Cir. 2013). This Court declines Plaintiffs' invitation to opine on the nature of this standard. Instead, the Court will use the Eighth Amendment standard in addressing Defendant Thomas's motions. *See Natale*, 318 F.3d at 582 ("We therefore evaluate the Natales' Fourteenth Amendment claim for inadequate medical care under the standard used to evaluate similar claims brought under the Eighth Amendment . . . ."); *Avila v. Michael Ott*, No. 3:CV-14-2119, 2015 WL 3620655, at *2 (M.D. Pa. June 9, 2015) ("Courts assess inadequate medical care claims [under the Fourteenth Amendment] under the familiar 'deliberate indifference' test set forth in *Estelle v. Gamble*."). In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale*, 318 F.3d at 582. *See also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). The Court finds Plaintiffs have produced enough evidence to create material issues of fact for trial under the Eighth Amendment deliberate indifference standard. Because Plaintiffs survive the summary judgment stage of this litigation under this standard, it is not necessary to resolve here the exact nature of the relationship between Eighth and Fourteenth Amendment medical care claims.

## 2. Persons Acting Under the Color of State Law

According to deposition testimony, Defendant Thomas is an independent contractor of PrimeCare. (Doc. 122 at 40). Despite this status, Defendant Thomas acted under the color of state law for purposes of Plaintiffs' § 1983 claim. It is a long standing aspect of § 1983 law that performance of a traditionally and exclusively public function renders otherwise private actors "persons acting under the color of state law." *See, e.g., Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974); *Leshko v. Servis*, 423 F.3d 337, 341 (3d Cir. 2005). Furthermore, the Supreme Court has specifically held that psychiatrists under contract with the State to provide medical care in correctional facilities can be state actors for the purposes of § 1983. *West v. Atkins*, 487 U.S. 42, 55-56 (U.S. 1988) ("It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State."). As in *West*,

> [i]f Doctor [Thomas] misused his power by demonstrating deliberate indifference to [Barbaros]'s serious medical needs, the resultant deprivation was caused, in the sense relevant for state-action inquiry, by the State's exercise of its right to punish [Barbaros] by incarceration and to deny him a venue independent of the State to obtain needed medical care.

*West v. Atkins*, 487 U.S. 42, 55 (U.S. 1988).[4]

## 3. Serious Medical Need

A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the

---

[4] The Court further notes that there has been no challenge in this litigation to Defendant Thomas's status as an actor subject to potential § 1983 liability.

necessity for a doctor's attention." *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987) (citation omitted). Additionally, if the delay or denial of adequate medical care results in the unnecessary and wanton infliction of pain or causes an inmate to suffer a life-long handicap or permanent loss, the medical need is "serious." *Id.* "[A] mental illness may constitute a serious medical need." *Torres v. Yocum*, No. 3:11-CV-1582, 2014 WL 2459676, at *5 (M.D. Pa. May 30, 2014) (citing *Goodrich v. Clinton County Prison*, 214 Fed. Appx. 105, 110–11 (3d Cir. 2007); *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979)). The Court finds that Barbaros's medical needs with respect to his mental health and the appropriate management of his psychiatric prescriptions were serious.[5]

### 4. Deliberate Indifference

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also McCullon v. Ebbe*, No. 3:15-CV-1205, 2015 WL 4412805, at *3 (M.D. Pa. July 17, 2015). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical

---

[5] Furthermore, Defendant Thomas does not challenge whether Barbaros had a serious medical need.

10

reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197; *see also Peterson v. Knauer*, 2008 U.S. Dist. LEXIS 14057, *10, 2008 WL 509207 (E.D. Pa. 2008) (explaining that the "the refusal to administer pain medication contrary to a surgeon's orders" may constitute deliberate indifference).

### a. Plaintiffs' Evidence Showing Disputed Issues of Material Fact

Plaintiffs have adduced sufficient evidence to show that Defendant Thomas knew of Barbaros's need for medical treatment and intentionally refused to provide adequate care. Plaintiffs have put forth expert testimony that SSRI discontinuation syndrome was "well characterized" in scientific literature at that the time that Barbaros was incarcerated at MCCF. (Doc. 169, Ex. 3 at 8). Thus, there is a triable issue of fact as to whether Defendant Thomas acted with deliberate indifference when his only action with respect to Barbaros was to order 30 milligrams of Paxil without inquiry after a short phone call with a prison nurse.

Deliberate indifference is a standard that requires factual findings with respect to a state actor's motivation. The Court cannot say at this stage that, as a matter of law, Defendant Thomas did not act with deliberate indifference to Barbaros's serious medical needs. Viewing the factual evidence adduced in the light most favorable to Plaintiffs, the Court finds that a reasonable jury could conclude that Defendant Thomas "was aware of a substantial risk of serious harm to [Barbaros] and that he disregarded that risk" when he ordered Paxil at a thirty milligram dosage level. *See Quigley v. Tuong Vinh Thai*, 707 F.3d

675, 682 (6th Cir. 2013) (holding that a triable issue of fact existed where Decedent's experts opined that it was "well known in the psychiatric profession" that two specific drugs should not be administered together and where prison psychiatrist knew Decedent had prescriptions for both drugs).

### b. Defendant's Arguments are Assertions of Fact for Trial

According to all Defendants in this litigation, the need for supplemental motions arose as the result of the deposition testimony of Plaintiffs' expert, Dr. Erik Roskes, taken after the original summary judgment motions had been filed. (Joint Motion to Supplement Summary Judgment Motions, Doc. 150 at 4; Brief in Support of Joint Motion, Doc. 151 at 1-2). In his supplemental summary judgment briefing, Defendant Thomas claims that Dr. Roskes has "fail[ed] to satisfy Plaintiff's [sic] burden of proof regarding 'causation,'" and it is on this basis that he moves for an entry of judgment in his favor on all claims against him. (Doc. 158 at 5). The Court has reviewed Dr. Roskes's deposition testimony and finds that Defendant Thomas has mischaracterized and overstated the degree to which Dr. Roskes equivocates on his positions. Furthermore, the issues that Defendant Thomas raises with respect to Dr. Roskes's opinions are questions of fact that it would be improper for the Court to decide at this stage. The facts asserted in Defendant Thomas's Statement of Facts and Plaintiffs' response to them serve as a prime example of the factual issues that remain in this case; while Parties agree on the words uttered in Dr. Roskes's testimony, Parties interpret those words very differently and draw different inferences from them. "Questions

about credibility and weight of expert opinion testimony are also for the trier of facts since such testimony is ordinarily not conclusive." *Drysdale v. Woerth*, 153 F. Supp. 2d 678, 689 (E.D. Pa. 2001).

With respect to Plaintiffs' § 1983 claims specifically, Defendant Thomas relies heavily on the unpublished Middle District case *Miszler v. Shoemaker*, such that a short description of the facts of that case is warranted. No. 3:04-CV-1756, 2009 WL 790139 (M.D. Pa. Mar. 20, 2009). Miszler was incarcerated at the Susquehanna County Correctional Facility when he received an injury requiring surgery and hospitalization. *Id*. at *1. Miszler was prescribed antibiotics at the hospital, though there was a 36-hour period during his hospitalization in which he did not receive the antibiotics. He was then returned to the correctional facility for 48 hours, in which he alleged he did not receive any antibiotics. *Id*. Miszler was then released on medical furlough and filled the prescription on his way home. *Id*. Two weeks later, possible signs of infection were noted and Miszler was ultimately readmitted to the hospital. *Id*. At trial against the warden of the correctional facility on a § 1983 claim, Miszler offered the expert testimony of Dr. Metzger. *Id*. Dr. Metzger was unable to testify that the infection would have been avoided had the correctional facility administered the antibiotics, testifying instead that it was "reasonable to assume that the appropriate administration of antibiotics would have minimized the likelihood of . . . infection." *Miszler*, 2009 WL 790139 at *3.

Then-District Court Judge Vanaskie granted the defendant warden's motion for

judgment as a matter of law and subsequently denied Plaintiff's motion for a new trial. *Id.* at

\*2. Judge Vanaskie concluded that

> [t]he evidence in this case was not sufficient to enable a jury to determine that Warden Brennan's alleged deliberate indifference to Mr. Miszler's serious medical need was a proximate cause of the infection that first manifested itself more than two weeks after Mr. Miszler's release from custody. Civil rights liability may not be based upon conjecture or speculation. Furthermore, Dr. Metzger's testimony did not establish a proper foundation for a causation finding under Pennsylvania law. Under these circumstances, the entry of judgment as a matter of law was fully warranted . . . .

*Id.* at 6. Defendant Thomas argues that Dr. Roskes's opinions are "nothing short of mere

possibilities, total speculation," (Doc. 158 at 13), and thus that this Court should follow

*Miszler* and refuse to submit the case to a jury.

Defendant Thomas misapplies *Mizsler* to this case, which is factually distinguishable

in important respects. Dr. Metzger was unable to localize the source of Miszler's troubles to

the failure to administer antibiotics in the jail, rather than to the lapse in antibiotics at the

hospital or to events in the two weeks between his release and signs of infection, all of

which Judge Vanaskie recognized. *Id.* at \*6. Here, Dr. Roskes has opined and testified

repeatedly that a cluster or chain of events of inadequate medical care at MCCF caused

Barbaros to commit suicide. (*See, e.g.*, Roskes Deposition, Doc 161, Ex. 1 at 41-42, 44,

70). He has also identified Defendant Thomas as a critical piece of the proverbial puzzle of

Barbaros's suicide, identifying the "higher than recommended dose" of Paxil prescribed by

Defendant Thomas as the "the precipitant" to Barbaros's suicide. *Id.* at 41. There is a

14

difference between an expert acknowledging that a defendant's conduct may have had nothing to do with a plaintiff's injury (*Miszler*) and an expert's inability to explain the precise way in which each part of a series of events created and contributed to a suicidal mental state.

Furthermore, Judge Vanaskie entered judgment against Miszler as a matter of law after the close of Dr. Metzger's testimony *at trial*. At that point, Miszler had had full opportunity to lay the foundation for Dr. Metzger's testimony and to convince the Court of its relevance to the case.[6] As such, the differences between the facts and posture of *Miszler* persuade this Court that *Miszler* is not a basis for granting summary judgment to Defendant Thomas. Plaintiffs have raised triable issues of fact as to whether Defendant Thomas's actions rose to the level of deliberate indifference and causation is simply one of those issues.[7]

---

[6] To the extent Defendant Thomas holds the view that Dr. Roskes lacks the requisite qualifications to offer expert opinion testimony under Federal Rules of Evidence 702 and 703, that issue has not been raised. Furthermore, the Court notes that nothing in the record supports a finding that Dr. Roskes is not qualified to offer such an opinion.

[7] Additionally, application of *Miszler* to the federal § 1983 claim in this case is far from required. While a Middle District case, *Miszler* itself is not controlling authority in the Middle District. And, while *Miszler* was a § 1983 case, much of the analysis in it centers upon questions of Pennsylvania *state* law and the requirement in state law medical negligence cases of expert testimony on the issue of causation offered "to a reasonable degree of medical certainty." *Miszler* does go on to state that "a § 1983 plaintiff may only recover damages for injuries that would not have occurred "but for" the alleged wrongful conduct." *Id.* at *5. Judge Vanaskie notes that "independent research [at the time] has not identified any controlling authority from the Court of Appeals for the Third Circuit" with respect to the causation standard in Eighth Amendment deliberate indifference cases and cites only persuasive authority for the proposition that but-for causation is required. *Id.* As a matter of law, it is not clear that a but-for causal relationship is necessary for Plaintiffs to prevail in this case and the Court declines to adopt such a standard. *See Heath v. Shannon*, 442 F. App'x 712, 715 (3d Cir. 2011) (remarking that the "'causal relationship' theory" relied upon in medical defendant's summary judgment motion "was based on two not precedential district court cases" [*Miszler* and *Walthour v. Tennis*, No. 06–0086, 2009 WL 2957742 (M.D. Pa. Sept.9, 2009)]).

Defendant Thomas also offers the expert report of Dr. James Noone (Reply Brief in Support of Supplemental Motion, Doc. 173 at 27-31). After reviewing Barbaros's prescription record for the seven years prior to his incarceration at MCCF, Dr. Noone concludes that, according to Dr. Roskes's theory, Barbaros would have previously experienced "many episodes" of discontinuation syndrome. Because he did not commit suicide or evidence suicidal ideation during that time, these prior gaps in the prescription record "demonstrate[] the absurdity of a theory of causation claiming that three days without Paxil caused Barbaros to commit suicide as a consequence of withdrawal or discontinuation syndrome," according to Dr. Noone. *Id.* at 28. Dr. Noone's report does not support the entry of summary judgment on behalf of Defendant Thomas. Defendant Thomas and his expert are inviting the Court to accept one expert's opinion over another and to find fact at the summary judgment stage; the connection between the periods in which Barbaros failed to fill his prescription at CVS and the conclusions drawn by Dr. Noone are triable questions of fact for the jury.

The Court also notes that it is under no obligation to consider Dr. Noone's report as it was presented for the first time as an exhibit to Dr. Thomas's reply brief. *See D'Aiuto v. City of Jersey City,* No. CIVA 06-6222 JAG, 2007 WL 2306791, at *4 n.1 (D.N.J. Aug. 8, 2007) ("[T]his Court has discretion to decline to consider new facts or arguments raised in a reply."). Accepting such evidence at this stage has the potential to

> rob[] the [nonmoving party] of the opportunity to demonstrate that the record
> does not support [Dr. Thomas]'s factual assertions and to present an analysis

16

> of the pertinent legal precedent that may compel a contrary result. The rule
> also protects this court from publishing an erroneous opinion because we did
> not have the benefit of the [Plaintiffs'] response.

*Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) (internal citation omitted). While a party

may offer rebuttal evidence in a reply brief, a reply brief is limited in scope and must

respond only "to matters either raised by the opposition or unforeseen at the time of the

original motion." *Burnham v. City of Rohnert Park*, No. C 92–1439, 1992 WL 672965, *5

(N.D. Cal. May 18, 1992). Plaintiffs' opposition brief is far from the first time Barbaros's

history of having been prescribed Paxil prior to his time at MCCF has been discussed in this

case.[8] Indeed, the prior existence of his Paxil prescription plays a key role in the factual

history of this case. Additionally, Dr. Roskes's expert report had been completed and his

deposition taken by the time Defendant Thomas filed his supplemental motion for summary

judgment. By the time he filed this motion, then, Defendant Thomas was well aware of

Plaintiffs' underlying theory of the case: that going off of and then back onto Paxil played a

causal role in Barbaros's suicide. Thus, the Court need not consider expert evidence that

could have been raised in the opening brief. *See Karlo v. Pittsburgh Glass Works, LLC.*, 880

F. Supp. 2d 629, 642 (W.D. Pa. 2012).

---

[8] The Court also notes that Dr. Noone's report is dated April 14, 2015. (Doc. 173 at 27). Plaintiffs' Brief in Opposition was filed April 24, 2015. (Doc. 169).

## B. State Law Claims

### 1. Intentional Infliction of Emotional Distress (Count II)

"Plaintiffs do not oppose defendant Thomas's motion with respect to claims for intentional infliction of emotional distress." (Plaintiffs' Brief in Opposition, Doc. 140 at 14). Thus, the Court will dismiss Plaintiffs' claims of intentional infliction of emotional distress against Dr. Thomas.

### 2. Negligence Claim (Count IV)

Under Pennsylvania law, "[f]or a party to prevail in a negligence action, ordinary or professional, the elements are identical: the plaintiff must establish [1] the defendant owed a duty of care to the plaintiff, [2] that duty was breached, [3] the breach resulted in the plaintiff's injury, and [4] the plaintiff suffered an actual loss or damages." *Merlini ex rel. Merlini v. Gallitzin Water Auth.*, 980 A.2d 502, 506 (Pa. 2009). Although the basic elements of both ordinary and professional negligence are the same, a medical malpractice claim is further defined as an "unwarranted departure from generally accepted standards of medical practice resulting in injury to a patient, including all liability-producing conduct arising from the rendition of professional medical services." *Id.* (quoting *Grossman v. Barke*, 868 A.2d 561, 566 (Pa. Super. Ct. 2005)).

Plaintiffs have produced abundant evidence creating a triable issue of fact as to whether Defendant Thomas was negligent. Dr. Roskes has opined the care provided by Defendant Thomas fell below the standard of care and had a causal role in his death in at

18

least the following ways: 1) failing to inquire into and assess the medical background of

Barbaros (Doc. 161-1 at 70); 2) failing to conduct a suicide risk assessment, *id.*; 3) not

attempting to obtain Barbaros's informed consent with respect to the medication ordered, *id.*

at 71; 4) "initiating treatment at a higher than recommended starting dose," *id.* at 73; 5)

failing "to initiate suicide precautions" once Paxil was ordered, *id.* While Defendant Thomas

argues that Plaintiffs' cannot prove causation based on Dr. Roskes's testimony, the Court's

prior analysis, *supra* Part (IV)(A)(4)(b), applies here as well: causation is a question of fact

for the jury. A reasonable jury could conclude that Defendant Thomas was negligent in his

treatment of Barbaros. Plaintiffs have adduced enough evidence to survive the summary

judgment stage.

### 3. Wrongful Death and Survival Claims (Counts V and VI)

Pennsylvania law provides that an "action may be brought . . . to recover damages

for the death of an individual caused by the wrongful act or neglect or unlawful violence or

negligence of another . . . ." 42 Pa. Cons. Stat. Ann. § 8301. "The purpose of the Wrongful

Death Statute is to compensate the decedent's relatives for their loss." *Gillette v. Wurst*, 937

A.2d 430, 436 (2007). "To recover from a wrongful death action, the plaintiff must

demonstrate that (1) a family relation existed, and (2) a pecuniary loss occurred." *Smith v.*

*Sandals Resorts Int'l, Ltd.*, 437 F. App'x 178, 182-83 (3d Cir. 2011) (citing *In re Estate of*

*Wolfe*, 915 A.2d 1197, 1200 (2006)). Plaintiffs in wrongful death actions may recover

damages "includ[ing] the present value of the services the deceased would have rendered

to the family, had she lived, as well as funeral and medical expenses." *Kiser v. Schulte*, 648 A.2d 1, 4 (1994).

"A survival action,[9] on the other hand, is not a new cause of action but one which 'merely continues in [the decedent's] personal representatives the right of action which accrued to the deceased at common law because of the tort.'" *Tulewicz v. Se. Pennsylvania Transp. Auth.*, 606 A.2d 427, 431 (1992). Damages awarded under a survival action may include damages for "the decedent's pain and suffering, the loss of gross earning power from the date of injury until death, and the loss of his earning power—less personal maintenance expenses, from the time of death through his estimated working life span." *Sandals Resorts Int'l*, 437 F. App'x at 184. These damages accrue to a decedent's estate. *Id.* "Pennsylvania policy favors wrongful death beneficiaries over estate beneficiaries." *Id.* at 185.

For the reasons set forth above in Part VI(B)(2), addressing Plaintiffs' state law negligence claim (Count IV), Plaintiffs' wrongful death (Count V) and survival (Count VI) claims must likewise survive summary judgment. There exist genuine disputes of material fact as to whether the actions or inactions of Defendant Thomas were the cause of Barbaros's suicide.

---

[9] "All causes of action or proceedings, real or personal, shall survive the death of the plaintiff or of the defendant, or the death of one or more joint plaintiffs or defendants." 42 Pa. C.S.A. § 8302.

## C. Punitive Damages

The Supreme Court has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Eichenlaub v. Township of Indiana*, 214 Fed. Appx. 218, 223 (3d Cir. 2007) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983)). The Third Circuit has further held that "this standard is disjunctive, and thus the defendant's conduct need only be reckless or callous." *Id.* at 223–24 (citing *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006)).

If the jury accepts Plaintiffs' allegations and the evidence in support thereof, it could reasonably find that Defendant Thomas was reckless or callous in his conduct. Therefore, the claims that this Court found must go to the fact-finder on the merits may also be considered for punitive damages. The Court will therefore deny Defendant Thomas's motion for summary judgment as to punitive damages with respect to these claims.

## V. CONCLUSION

Based on the foregoing, Defendant Thomas's motions for summary judgment will be denied .

A separate Order follows.

Robert D. Mariani
United States District Judge