THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER PONZINI, ESQUIRE and  :
MIRYEM BARBAROS, as    :
Co-Administrators of the Estate of :
Mumun Barbaros, Deceased,  :
          :
   Plaintiffs,    :
  v.        :  **3:11-CV-00413**
          :  **(JUDGE MARIANI)**
MONROE COUNTY, et al.,  :
          :
   Defendants.   :

**FILED**
**SCRANTON**

AUG 24 2016

PER _____
DEPUTY CLERK

## MEMORANDUM OPINION

Presently before the Court are the following four motions in limine:

1. Defendants' Joint Motion in Limine to Preclude Testimony Concerning or Reasonably Relating to any Cause of Action Which Has Not Been Timely Pled in Plaintiffs' Complaint. (Doc. 213).

2. The PrimeCare Medical Defendants' Motion in Limine to Preclude Evidence and/or Testimony of the Misspelling of Decedent's Name as Being the Source and Cause of Failure to Verify Medications. (Doc. 217).

3. Plaintiffs' Motion in Limine to Preclude From Trial Video Evidence of Mumun Barbaros' Arraignment. (Doc. 227).

4. Plaintiffs' Motion in Limine to Preclude from Trial Any Reference to Statements

Made by Mumun Barbaros to Correctional Officers While Incarcerated on the

Basis that Such Statements are Inadmissible Hearsay Evidence.  (Doc. 230).

The Court will address each in turn.

First, Defendants ask the Court to preclude testimony concerning or reasonably relating

to any cause of action which has not been timely pled in Plaintiffs' Complaint.  Specifically,

Defendants assert that Plaintiffs' liability expert, Dr. Roskes, will offer an opinion stating that

Defendants "medical records were 'poorly prepared and maintained.'"  (Doc. 213, at 3).

Because "Plaintiffs' Complaint does not set forth any claim/cause of action with regard to an

allegation that the medical records in this case were 'poorly prepared and maintained,"

Defendants maintain that "[s]uch testimony would be more prejudicial than probative since

this testimony would be tantamount to asserting a new cause of action after the running of

the applicable statute of limitations." (*Id.*).

In response, Plaintiffs assert that:

> Defendants correctly anticipated that, among the evidence presented at trial, will be
> criticisms of the medical records prepared by the defendants relating to Mr.
> Barbaros' treatment.  In an effort to avoid evidence that undoubtedly will hurt their
> defense, defendants attempt to couch Dr. Roskes' opinions and all testimony
> regarding the poorly detailed and completed medical records as a 'new cause of
> action.'  Not only is the preparation of medical records not a new cause of action, but
> it would be impossible to pursue any medical malpractice action without the ability to
> comment on the preparation of the medical records as the quality of the medical
> chart is at issue in every medical malpractice case.  The chart is directly relevant and

2

related to rendering proper, appropriate and necessary medical care and communication among medical providers.

(Doc. 253, at 1-2).

The Court agrees with the Plaintiffs and cannot see how criticism of the medical records in this case qualifies as a new cause of action. Nor does the Court find that Defendants are unfairly surprised or prejudiced by the fact that Plaintiffs intend to introduce testimony critical of the maintenance of their medical records. Plaintiffs' expert reports, as well as Plaintiffs' Amended Complaint, (Doc. 43), contain various allegations regarding Defendants' failure to take appropriate steps to ensure Mr. Barbaros received proper medical care, including allegations that Defendants failed to communicate Mr. Barbaros' medical problems and diagnoses (which are done, in part, through medical charts). (*Id.* at ¶¶ 64, 67). The Court will therefore deny Defendants' Motion.

Second, the PrimeCare Medical Defendants move to preclude evidence and/or testimony of the misspelling of decedent's name as being the source and cause of failure to verify medications. (Doc. 217). According to Defendants, any testimony from Plaintiffs' expert Nurse Wild regarding the Defendants "careless" completion of screening documents fails *Daubert*'s reliability requirement because it is "not based in fact or evidence." (*Id.* at 2-3).

In response, Plaintiffs first assert that Defendants' motion should be denied because "there is evidence in the record which shows Mr. Barbaros' name being misspelled several times. These misspellings were relied on by the defendant nurses in attempting to verify the

medications." (Doc. 254, at 2). Second, Plaintiffs note that "defendants never asked Mr. Barbaros during his intake or at any time during his detention whether he used any 'other' name or nickname that could be used to verify his medications; something that reasonably and easily could and should have been done." (*Id.*). Third, "the numerous misspellings of Mr. Barbaros' name support Ms. Wild's opinion that the intake was the beginning of a downward spiral of carelessness displayed by the defendants that led to Mr. Barbaros' ultimate demise." (*Id.* at 3).

It is for the jury to determine whether Defendants misspelling of decedent's name contributed to a delay in treatment and was causally connected to his death. Moreover, the Court is not convinced by Defendants' arguments that Nurse Wild's proposed testimony with respect to the careless completion of screening documents and the misspelling of decedent's name are "not based in fact or evidence" such that *Daubert*'s reliability requirement requires the exclusion of her testimony on this issue. Accordingly, Defendants' Motion will be denied.

Third, Plaintiffs ask the Court to preclude from trial video evidence of Mumun Barbaros' Arraignment. (Doc. 227). According to Plaintiffs, although there is no actual video of the arraignment itself, a local news station took video of Mr. Barbaros in his prison jumpsuit with his hands shackled as he walked from the police patrol car into the Courthouse. (*Id.* at 2). Plaintiffs maintain that permitting "defendants to play or testify about the video would mislead the jury to think that Mr. Barbaros was guilty and would suggest to the jury an

improper basis for its verdict based upon prejudice against Mr. Barbaros." (*Id.* at 3).

Defendants oppose Plaintiffs' Motion, maintaining that the video evidence is "probative as to

his behavior and demeanor." (Doc. 246, at 4).  Without having seen the video in question,

the Court cannot determine whether the probative value of the video, if any, is substantially

outweighed by the danger of unfair prejudice and thus must reserve decision on this motion.

Finally, Plaintiffs also ask the Court to preclude any references to statements made by

Mr. Barbaros to correctional officers while incarcerated on the basis that such statements

are inadmissible hearsay.  (Doc. 230).  Specifically, Plaintiffs direct to the Court to the

deposition testimony of Correctional Officer Jonathan K. Ryan, who testified that Mr.

Barbaros "promised to make him a pizza" once he was released from prison "because Mr.

Ryan was a 'good guy.'" (*Id.* at 3).   Defendants, on the other hand, maintain that the

statement at issue is admissible as an admission by a party-opponent pursuant to Federal

Rule of Evidence 801(d)(2).  Alternatively, Defendants claim the statement is admissible

under the residual exception to the hearsay rule found in Federal Rule of Evidence 807.

Federal Rule of Evidence 801(d)(2) provides, in relevant part, that certain statements

made by the opposing party are not hearsay.  To fall within Rule 801(d)(2), the statement at

issue must be "offered against an opposing party" and:

(A) was made by the party in an individual or representative capacity;
(B) is one the party manifested that it adopted or believed to be true;
(C) was made by a person whom the party authorized to make a statement on the subject;
(D) was made by the party's agent or employee on a matter within the scope of that representation while it existed; or

(E) was made by the party's coconspirator during and in furtherance of the conspiracy.

Fed. R. Evid. 801(d)(2)(A)-(E). According to the Plaintiffs, Rule 801(d)(2) does not apply

because the statement at issue was made by the decedent, not the estate or its

representatives.

The Courts are divided on whether a statement by a decedent is admissible under Rule

801(d)(2) in an action brought by the decedent's estate. *See, e.g., Estate of Shafer v.*

*Comm'r of Internal Revenue*, 749 F.2d 1217, 1220 (6th Cir. 1984) ("Since Arthur, through

his estate, is a party to this action, his statements are a classic example of an admission." )

(internal citation and quotation marks omitted); *In re Cornfield*, 365 F. Supp. 2d 271, 277

(E.D.N.Y. 2004) (noting that "[w]hile some courts have admitted decedents' statements as

party-opponent admissions of the decedent's estate," Rule 801(d)(2) does not apply and

therefore the decedents statement "must be admitted pursuant to an alternative exception

or exemption"); *Schroeder v. de Bertolo*, 942 F. Supp. 72, 78 (D.P.R. 1996) (noting that

Rule 801(d)(2) "does not specifically address the admissibility of the statements of a

decedent against decedent's estate. Nevertheless, commentators and courts have held

that these statements are properly considered party admissions."). The more recent cases,

however, hold that such statements do not fall within Rule 801(d)(2). As stated by the

district court in *Cornfield*:

> The Court concludes that [the decedent's] statement does not fall within the ambit of
> Rule 801(d)(2)(A). The 'question of whether a decedent's statement is properly
> admitted as an admission of a party opponent against the decedent's estate is
> properly treated as a question of privity based admissions.' Wright & Miller, *Federal*

6

>*Practice & Procedure* § 7019 n.1. At common law, statements made by those in
>privity with a party to the action were considered admission of that party. *See Huff,*
>609 F.2d at 290. As explained in *Huff v. White Motor Corporation,* Rule 801(d)(2)
>(A) altered the common law rule by providing only for the admission of statements
>made by a party to the action. Privity-based admissions were abolished. . . .
>Notably, Rule 801(d)(2)(A) provides for several types of party-opponent
>admissions—such as adoptive admissions, or statements made by an agent—but
>does not include any provision concerning privity-based admissions.

*In re Cornfield,* 365 F. Supp. 2d at 277. The Court went on to conclude that in order for the

statement to be admissible, the statement must meet the exacting standard for admissibility

set forth in the residual hearsay exception. The Court agrees with the *Cornfield* Court, and

concludes that the statement at issue does not fall within the ambit of Rule 801(d)(2).

Accordingly, the Court must determine whether the statement is admissible under Federal

Rule of Evidence 807.

Federal Rule of Evidence 807, the residual hearsay exception, "is rarely invoked, and

applied only in exceptional circumstances." *Navedo v. PrimeCare Med., Inc.,* No. 1:12-cv-

00888, 2014 WL 1451836, at *2 (M.D. Pa. Apr. 14, 2014) (citing *Bohler-Uddeholm Am., Inc.*

*v. Ellwood Grp., Inc.,* 247 F.3d 79, 112 (3d Cir. 2001)). Rule 807 applies "only when certain

exceptional guarantees of trustworthiness exist and when high degrees of probativeness

and necessity are present." *United States v. Bailey,* 581 F.2d 341, 347 (3d Cir. 1978). The

rule provides, in relevant part, that under certain circumstances "a hearsay statement is not

excluded by the rule against hearsay even if the statement is not specifically covered by a

hearsay exception in Rule 803 or 804." Fed. R. Evid. 807. Those circumstances include

when:

(1) the statement has equivalent circumstantial guarantees of trustworthiness;

(2) it is offered as evidence of a material fact;

(3) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and

(4) admitting it will best serve the purposes of these rules and the interests of justice.

Fed. R. Evid. 807(a)(1)-(4).  The Court will address each requirement in turn.

To determine whether the proffered evidence has "equivalent circumstantial guarantees of trustworthiness" courts look to the following factors:

(1) whether the declarant was under oath when the statement was made; (2) whether the declarant voluntarily made the statement; (3) whether the statement was based on the declarant's personal knowledge; (4) whether the statement contradicted a prior statement; (5) whether the statement was videotaped in order to provide the jury with an opportunity to evaluate the declarant's demeanor; (6) the ability of an adverse party to cross-examine the declarant; (7) the proximity in time between the statement and the events described; (8) whether the statement is corroborated; (9) the declarant's motivation to fabricate the contents of the statement; (10) whether the statement was prepared in anticipation of litigation; (11) the statements spontaneity; and (12) whether the declarant's memory or perception was faulty.

*Navedo*, 2014 WL 1451836, at *2 (citations omitted).  Here, the declarant was neither under oath nor subject to cross-examination.  *See Kyeame v. Buchheit*, No. 07-01239, 2011 WL 6151428, at *2 (M.D. Pa. Dec. 12, 2011) ("[Declarant's] statements were neither made under oath nor subject to cross-examination, the traditional methods used to ensure trustworthiness.").  The statement was not videotaped in order to provide the jury with an opportunity to evaluate the declarant's demeanor, nor was it prepared in anticipation of litigation.  As to the remaining factors, the Court lacks sufficient information to determine, for example, whether the statement was voluntarily made, whether the declarant had a faulty

memory, the declarant's motivation to fabricate, etc. Nevertheless, even if the Court were to assume that the statement satisfied the first factor set forth in Rule 807(a)(1) and possessed sufficient guarantees of trustworthiness, it would fail the remaining three factors warranting its exclusion.

First, the statement at issue is not being offered as evidence of a material fact. *See* Fed. R. Evid. 807(a)(2). Although Defendants maintain that the statement is probative of Mr. Barbaros' mental state and demonstrates that he was not suicidal, the Court fails to see how an alleged statement by a detainee to a correctional officer that he would make him a pizza when he got out of prison has any tendency to prove that he was not suidical. The Court further finds that the statement at issue is not more probative on the point for which it is offered than any other evidence Defendants' can obtain through reasonable efforts. *See* Fed. R. Evid. 807(a)(3). Indeed, Defendants point to numerous statements made by Mr. Barbaros to medical professionals while he was incarcerated in an attempt to demonstrate that he gave no indication that he was suicidal. These statements, made to nurses and mental health professionals, are far more probative of Mr. Barbaros' state of mind than the statement at issue. Nor is the Court convinced that the purposes of the Federal Rules of Evidence and the interests of justices are best served by admission of the statement. *See* Fed. R. Evid. 807(a)(4). Accordingly, the Court will grant Plaintiffs' Motion with the caveat that the Court's decision pertains *only* to the statement identified by the Plaintiffs concerning Mr. Barbaros' statement to correctional officer Ryan that he would make him a pizza when

he got out of prison.  The Court will reserve decision on any other hearsay statements Mr. Barbaros is alleged to have made to correctional officers that Defendants may seek to introduce.


Robert D. Mariani
United States District Judge