THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

PETER PONZINI, ESQUIRE and        :
MIRYEM BARBAROS, as               :
Co-Administrators of the Estate of :
Mumun Barbaros, Deceased,         :
                                  :
      Plaintiffs,                :
v.                                :    3:11-CV-00413
                                  :    (JUDGE MARIANI)
MONROE COUNTY, et al.,            :
                                  :
      Defendants.                :

## MEMORANDUM OPINION

Presently before the Court are the following five motions in limine concerning the parties' expert witnesses:

1. Defendants' Joint Motion in Limine to Limit Plaintiffs' Expert, Kathryn J. Wild, RN, MPA, CCHP, from Offering Certain Expert Testimony. (Doc. 209).

2. Defendants' Joint Motion in Limine to Preclude Plaintiffs' Expert Opinions of Kathryn J. Wild. (Doc. 219).

3. The PrimeCare Medical Defendants' Motion in Limine to Preclude Testimony As it Relates to Any Criticisms, Conclusions, or Opinions as to the Sufficiency and Adequacy of William Buffton's Treatment. (Doc. 216).

4. Plaintiffs' Motion in Limine to Preclude at Trial Defense Expert Terry Fillman From Offering any Opinion about Jennifer Mroz, Grace Ramos, Alex Thomas, M.D., Wendy Johnson, and Deborah Wilson, D.O. (individuals Not Named in His Report and Deposition) or Any Medical Opinion Regarding Mental Healthcare Provided by William Bufftton. (Doc. 229).

5. Plaintiffs' Motion in Limine to Preclude Cumulative Expert Testimony. (Doc. 231).

The Court will address each in turn.

In the first motion, Defendants ask the Court to limit two aspects of the testimony of Plaintiffs' Expert, Kathryn J. Wild, RN, MPA, CCNP. (Docs. 209). First, Defendants seek to preclude Ms. Wild's testimony concerning SSRI Discontinuation (or Withdrawal) Syndrome and its alleged association with suicidal tendencies on the theory that Ms. Wild disclaimed any expertise on SSRI Discontinuation Syndrome and testified that she was not qualified to answer whether there was any correlation between an individual experiencing SSRI Discontinuation Syndrome and suicide. (*Id.* at 2-3). Plaintiffs oppose the motion, noting that "[w]hile Ms. Wild admits that she is not an expert in SSRI Withdrawal Syndrome, she is familiar with the condition, its symptoms, and general withdrawal symptoms. Thus, she would be permitted to testify regarding what training should have been provided to the nursing staff regarding SSRI Withdrawal Syndrome and what symptoms the nursing staff should have been looking for in the context of treating Mr. Barbaros." (Doc. 255, at 2). Based on the Court's review of Ms. Wild's expert report and qualifications, the Court is of

the opinion that Ms. Wild has sufficient expertise to offer an opinion on SSRI Discontinuation Syndrome in connection with her testimony as to what training should have been provided to the nursing staff regarding SSRI Discontinuation Syndrome and the symptoms the nursing staff should have been looking for in the context of treating Mr. Barbaros.

Defendants also ask the Court to preclude Ms. Wild from offering testimony critical of Dr. Thomas because, under Pennsylvania law, a plaintiff must provide a medical expert to testify as to the applicable standard of care in a medical malpractice action. *See Toogood v. Rogal*, 824 A.2d 1140, 1145 (Pa. 2003). Specifically, section 512 of Pennsylvania's Medical Care Availability & Reduction of Error Act sets forth medical expert qualifications and provides, in relevant part, that an expert must "possess an unrestricted *physician's* license to practice medicine in any state or the District of Columbia." 40 P.S. § 1303.512(b)(1) (emphasis added). Because Ms. Wild does not possess a physician's license to practice medicine, Defendants assert that she is incompetent to testify against Dr. Thomas. Plaintiffs note that "Ms. Wild does not intend to offer testimony that defendant Thomas breached the applicable standard of care for psychiatrists as she is not a physician." (Doc. 255, at 1-2). However, Plaintiffs maintain that "Ms. Wild should be permitted to offer testimony regarding defendant Thomas' actions in the context of the general healthcare afforded to Mr. Barbaros during his detention as Ms. Wild is qualified as

both a nursing expert and as an expert in correctional healthcare and healthcare administration." (*Id.* at 2).

The Court concludes that Ms. Wild may not testify regarding the standard of care and medical causation with respect to Dr. Thomas. Plaintiffs' argument that Ms. Wild should be permitted to offer testimony regarding Dr. Thomas' "actions in the context of the general healthcare afforded to Mr. Barbaros during his detention" is a backdoor attempt to offer testimony that, under Pennsylvania law, she is not competent to offer. Accordingly, Defendants' motions, (Docs. 209, 219), will be granted in part and denied in part. Nurse Wild may not testify regarding the standard of care or medical causation with respect to Dr. Thomas. Nor may Nurse Wild testify regarding Dr. Thomas' "actions in the context of the general healthcare afforded to Mr. Barbaros during his detention." (Doc. 255, at 1-2). Nurse Wild may, however, offer an opinion on SSRI Discontinuation Syndrome in connection with her testimony as to what training should have been provided to the nursing staff regarding SSRI Discontinuation Syndrome and the symptoms the nursing staff should have been looking for in the context of treating Mr. Barbaros.

Next, the PrimeCare Medical Defendants ask the Court to preclude testimony as it relates to any criticisms, conclusions, or opinion as to the sufficiency and adequacy of William Buffton's treatment of Mumun Barbaros. (Doc. 216). At the time of the incident in question, William Buffton was a contractor with PrimeCare Medical and was not an employee. (*Id.* at 2). According to Defendants, because Mr. Buffton has been dismissed

from this case, "to allow the Plaintiffs to present a theory of vicarious liability would be impermissible." (*Id.* at 3). Moreover, "[e]xpert testimony that Mr. Buffton was negligent or reckless would have no tendency to make any of the allegations against the PrimeCare Medical Defendants as set forth in the Complaint more or less probable than they would without any such testimony and any negligence or recklessness of Mr. Buffton is of no consequence in determining such claims." (*Id.* at 4).

Plaintiffs oppose the PrimeCare Medical Defendants motion, maintaining that:

> Rather than acknowledging that this case is based in both medical malpractice and Section 1983, the PrimeCare defendants focus their arguments solely on the fact that PrimeCare cannot be held liable under Section 1983 based upon *respondeat superior*. While that is correct, the fact that plaintiff still can recover against PrimeCare on its state law claims of medical negligence based upon a theory of *respondeat superior* and direct corporate liability is dispositive that any evidence relating to Mr. Buffton's treatment is admissible at trial. . . . As the actions of and treatment rendered by Mr. Buffton as PrimeCare's agent at MCCF is directly relevant to establishing a direct corporate negligence claim and a claim based upon *respondeat superior*, the PrimeCare defendants' motion should be denied.

(Doc. 251, at 2). The Court agrees with Plaintiffs and, accordingly, will deny the PrimeCare Medical Defendants' motion.

Next, Plaintiffs ask the Court to preclude Defense expert Terry Fillman from offering certain testimony concerning individuals not named in his expert report or deposition, or any medical opinion regarding mental healthcare provided by William Buffton. (Doc. 229). In his report, Mr. Fillman writes that "the documented actions by health service staff were appropriate, reasonable, caring, and what another reasonable nurse would have done given

the same circumstances." (*Id.* at 2). According to Plaintiffs, when asked at his deposition about which defendants he was offering an opinion, Mr. Fillman indicated that he was not offering opinions about the actions of defendants Jennifer Mroz, Grace Ramos, Alex Thomas, M.D., Wendy Johnson, and Deborah Wilson, D.O. (*Id.* at 2-3). Thus, Plaintiffs argue that "Defendants should be precluded from enlarging the scope of Mr. Fillman's report and the individuals about whom he is offering opinions on the basis that such testimony would constitute unfair surprise, prejudice plaintiffs, disrupt an orderly trial, and be tantamount to bad faith on the part of defendants." (*Id.* at 3). In addition, Plaintiffs move to preclude Mr. Fillman, a nurse, from offering a medical opinion on the mental healthcare provided by Mr. Buffton, a mental healthcare provider. (*Id.*).

Defendants oppose Plaintiffs' motion. First, Defendants maintain that while Nurse Fillman "does not explicitly name every individual employed by PrimeCare at the time of the subject incident" his opinion is that the "entire health services staff acted appropriately and reasonably in the care of Mr. Barbaros." (Doc. 246, at 5). In addition, Defendants maintain that a review of Nurse Fillman's report "specifically outlines his expert opinion as to the actions of specific healthcare providers as well as the conduct of PrimeCare's staff, in general. As such, Plaintiffs' arguments that Nurse Fillman's opinion would result in prejudice and unfair surprise is unfounded and without merit." (*Id.*). With respect to Nurse Fillman's opinion as to Mr. Buffton, Defendants maintain that he gave no such opinion and that Plaintiffs attempt to mischaracterize his testimony. (*Id.* at 6). Rather, Nurse Fillman

"clearly outlined that his opinion was in relation to the interplay between Mr. Buffton's treatment and the nursing standards and procedures upon which he was requested to testify. Furthermore, Nurse Fillman clearly states that he was not providing an opinion as to the mental health care standard; however, given the nature of Mr. Barbaros' case, there would have been overlap in the continuity of treatment and Nurse Fillman's testimony reflects that overlap." (*Id.* at 6-7). The Court will not preclude Nurse Fillman's testimony based on the facts presented and finds that Plaintiffs' claims of prejudice and unfair surprise are without merit. Moreover, the Court finds that any opinion of the care provided by Mr. Buffton relates to the overlap in the continuity of Mr. Barbaros' treatment and is not testimony with respect to the mental health care standard of care. Accordingly, Plaintiffs' motion will be denied.

Finally, Plaintiffs request that the Court preclude Defendants' experts from offering cumulative testimony at trial. (Doc. 231). Plaintiffs set forth several arguments in support of this motion. Specifically, that: (1) five of the witnesses opine that the physical and mental symptoms related to the abrupt cessation of Paxil (known as SSRI Discontinuation Syndrome) did not cause Mr. Barbaros' death; (2) six of the witnesses opine that any symptoms Mr. Barbaros' displayed were attributable to preexisting conditions and/or outside factors; (3) five of the witnesses opine that, even if Mr. Barbaros did have SSRI Discontinuation Syndrome, symptoms are flu-like and resolve rapidly when Paxil use is resumed; (4) four witnesses opine that SSRI Discontinuation Syndrome does not cause

suicidal ideation; (5) five witnesses opine that Mr. Barbaros had a therapeutic level of Paxil in his bloodstream at the time of his death; (6) three experts opine that the manner in which Mr. Barbaros committed suicide suggests that his actions were premediated and that he did not want to be discovered; (7) three witnesses opine that Dr. Thomas did not display deliberate indifference, deviate from the standard or care, do anything wrong, or cause Mr. Barbaros' death; (8) five of the witnesses opine that correctional nursing and mental health staff, including Paul James, Patricia Bauer, William Buffton, and Christine Rowe did not breach the standard of care; and (9) four of the witnesses opine that healthcare professionals did not violate applicable policies, procedures, or protocols. (Doc. 231, at 5-7).

As to the arguably cumulative testimony, the Defendants argue that because each of its experts "approach a material issue from different clinical perspectives, their testimony is not necessarily cumulative." (Doc. 246, at 7). The PrimeCare Medical Defendants' experts include: (1) Terry Fillman, R.N. – correctional nursing expert; (2) Cheryl Wills, M.D. – forensic psychiatrist; (3) Lawrence J. Guzzardi, M.D. – emergency medicine physician and toxicologist; and (4) Lawrence Mendell, D.O. – correctional healthcare. (*Id.* at 7-8). Defendant Dr. Thomas' experts include: (1) Dr. Susan Rushing – psychiatrist; and (2) Dr. Noone – anesthesiologist.

Federal Rule of Evidence 403 allows a Court to exclude relevant evidence if its probative value is substantially outweighed by a danger of needlessly presenting cumulative

evidence. However, where experts approach a material issue from a different clinical perspective, their testimony is not necessarily cumulative. *See Klein v. Aronchick*, 85 A.3d 487, 501 n.7 (Pa. Super. Ct. 2014).[1] It is clear that each of the Defendants' experts appear to have a different medical specialization. However, without knowing the content of each witness's testimony, the Court is unable to determine whether any witness's testimony will prove to be cumulative. Accordingly, due to the premature nature of Plaintiffs' motion in limine, the Court will deny the motion without prejudice.

Robert D. Mariani
United States District Judge

---

[1] In *Klein*, the Pennsylvania Superior Court found that:

> [Plaintiff] Klein argues that the trial court erred in allowing the defendants to present three different expert witnesses on causation. Klein contends that the testimony was cumulative . . . . Here, while all three of defendants' experts ultimately reached the same conclusion, *i.e.*, that Visicol did not cause Klein's chronic kidney disease, they approached the issue from different clinical perspectives. Jesse Goldman, M.D., was a nephrologist and internist; James R. Roberts, M.D. was a medical toxicologist, and David Kastenberg, M.D. testified as a gastroenterologist. Therefore, while their testimony may have been corroborative, it was not needlessly cumulative.

*Klein v. Aronchick*, 85 A.3d at 501 n.7.