# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER PONZINI, ESQUIRE and | : | NO. 3:11-CV-413 |
| MIRYEM BARBAROS, as | : | |
| Co-Administrators of the Estate of | : | JUDGE ROBERT D. MARIANI |
| Mumun Barbaros, Deceased, | : | |
| Plaintiffs | : | *ELECTRONICALLY FILED* |
| | : | |
| v. | : | CIVIL ACTION – LAW |
| | : | |
| PRIMECARE MEDICAL, INC., et al. | : | JURY TRIAL DEMANDED |
| Defendants | : | |

## PRIMECARE DEFENDANTS' BRIEF IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL OR FOR A REMITTITUR PURSUANT TO FED. R. CIV. P. 50 AND 59 (DOC. 366)

Respectfully submitted,

JOHNSON, DUFFIE, STEWART & WEIDNER
By:    s/John R. Ninosky
         John R. Ninosky, Esquire
         Attorney I.D. No. 78000
         301 Market Street ~P. O. Box 109
         Lemoyne, PA  17043-0109
         Telephone (717) 761-4540
         Email:  jrn@jdsw.com
         Attorney for PrimeCare Defendants

DUANE MORRIS LLP
By:    s/Robert L. Byer
         Robert L. Byer, Esquire
         Attorney I.D. No. 123246
         600 Grant Street, Suite 5010
         Pittsburgh, PA  15219-2802
         Telephone (412) 497-1083
         Email:  rlbyer@duanemorris.com

Date:  March 15, 2017          Attorney for PrimeCare Defendants

# TABLE OF CONTENTS

TABLE OF CONTENTS..........................................................................i

TABLE OF AUTHORITIES .............................................................. iii

I.    RELEVANT PROCEDURAL HISTORY ......................................1

II.   STATEMENT OF FACTS .........................................................3

III.  ISSUES ..................................................................................8

IV.  ARGUMENT..........................................................................9

    A.    THE PRIMECARE DEFENDANTS ARE ENTITLED
        TO JUDGMENT AS A MATTER OF LAW .......................9

        1.    The PrimeCare Defendants are entitled to judgment
            as a matter of law on Plaintiffs' constitutional claim ................9

             a.    Paul James ....................................................15
             b.    Patricia Bauer.................................................17
             c.    Christina Rowe ...............................................19
             d.    Grace Ramos....................................................20
             e.    PrimeCare Medical, Inc.................................22

    B.    THE PRIMECARE DEFENDANTS ARE ENTITLED TO
        JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS'
        NEGLIGENCE CLAIM.....................................................25

    C.    PRIMECARE IS ENTITLED TO JUDGMENT AS A
        MATTER OF LAW CONCERNING THE JURY'S
        AWARD OF PUNITIVE DAMAGES ...............................27

    D.    THE PRIMECARE DEFENDANTS ARE ENTITLED TO
        NEW TRIAL ...................................................................30

1.     The PrimeCare Defendants are entitled to new trial, because the Court erred in permitting questioning and argument concerning Pennsylvania nursing law and where the Court provided a negligence *per se* charge concerning Pennsylvania nursing where Plaintiffs provided no expert testimony that PrimeCare violated Pennsylvania nursing law .........................32

2.     The Court made additional erroneous evidentiary Rulings which require a new trial. ...........................................36

    a.     The Court erred in precluding evidence of Barbaros' criminal charges.............................................37

    b.     The Court erred in preventing Defendants from presenting evidence in the form of statements made by Barbaros to correctional officers. ...........................................................39

    c.     The Court erred in permitting evidence of the misspelling of Barbaros' first name.........................41

    d.     The Court erred in permitting Barbaros' daughter, Mumtaz Barbaros, to testify at trial. ..............................................................................42

3.     The PrimeCare Defendants are entitled to a new trial, because the jury's verdict was against the weight of the evidence. .................................................................................43

C.     ALTERNATIVELY, THE PRIMECARE DEFENDANTS ARE ENTITLED TO A NEW TRIAL ON DAMAGES OR REMITTITUR...................................................................................44

# TABLE OF AUTHORITIES

**<u>Cases</u>** **<u>Page</u>**

<u>Ansell v. Green Acres Constr. Co.</u>,
   347 F.3d 515 (3d Cir. 2003) ...............................................................36

<u>Beck v. City of Pittsburgh</u>,
   89 F.3d 966 (3d Cir. 1996) ...........................................................9, 13

<u>Beers-Capitol v. Whetzel</u>,
   256 F.3d 120 (3d Cir. 2001) ...............................................................11

<u>Bd. Of the Cty. Comm'rs v. Brown</u>,
   520 U.S. 397, 117 S. Ct. 1382 (1997)..................................................12

<u>Borrell v. Bloomsburg Univ.</u>,
   2016 U.S. District LEXIS 127026 (M.D. Pa. 2016)....................................31, 32

<u>Bowring v. Godwin</u>,
   551 F.2d 44 (4th Cir. 1977) ...........................................................11, 18

<u>Brown v. Borough of Chambersburg</u>,
   903 F.3d 274 (3d Cir. 1990) ...............................................................11

<u>Brown v. Muhlenberg Twp.</u>,
   269 F.3d 205 (3d Cir. 2001) ...............................................................13

<u>City of Canton v. Harris</u>,
   489 U.S. 378, 109 S. Ct. 1197 (1989)..........................................13, 14

<u>City of L.A. v. Heller</u>,
   475 U.S. 796, 799, 106 S. Ct. 1571 (1986) ........................... 13, 22-23

<u>Estelle v. Gamble</u>,
   429 U.S. 97, 97 S. Ct. 285 (1976)........................................................10

Galena v. Leone,
    638 F.3d 186 (3d Cir. 2011) ...................................................................9

Gottlieb v. Laurel Highlands Sch. Dist.,
    272 F.3d 168 (3d Cir. 2001) .................................................................13

Griggs v. Dauphin Cty. Prison,
    No. 1:06-0823, 2008 U.S. Dist. LEXIS 47789,
    2008 WL 2518090 (M.D. Pa. June 19, 2008)......................................12

Hutchinson v. Luddy,
    896 A2d 1260 (Pa. Super. 2006) ..........................................................28

Inmates of Allegheny Cty Jail v. Pierce,
    612 F.2d 754 (3d Cir. 1979) ...........................................11, 18, 20, 22

McDermott Int'l, Inc. v. Wilander,
    498 U.S. 337, 111 S. Ct. 807 (1991)......................................................9

Miller v. City of Phila.,
    No. 96-3578, 1996 U.S. Dist. LEXIS 17514
    1996 WL 683827 (E.D. Pa. Nov. 21, 1996) .......................................12

Monell v. Dep't. of Soc. Servs.,
    436 U.S. 658, 98 S. Ct. 2018 (1978)........................................12, 13, 22

Montgomery v. De Simone,
    159 F.3d 120 (3d Cir. 1998) ................................................................14

Montgomery Ward & Co. v. Duncan,
    311 U.S. 243, 61 S. Ct. 189 (1940)......................................................31

Natale v. Camden Cty. Corr. Facility,
    318 F.3d 575 (3d Cir. 2003) ...........................................................12, 22

Olefins Trading, Inc. v. Han Yang Chem. Corp.,
    9 F.3d 282 (3d Cir. 1993) ....................................................................30

Pearson v. Prison Health Serv.,
    2017 U.S. App. LEXIS 4003 (3d Cir. Mar. 7, 2017) ................11, 18, 20, 21, 22

Pittman v. Cty. of Madison,
    746 F.3d 766 (7th Cir. 2014) ...............................................................12

Pryer v. C.O. 3 Slavic,
    251 F.3d 448 (3d Cir. 2001) .................................................................30

Rouse v. Plantier,
    182 F.3d 192 (3d Cir. 1999) ............................................................9, 10

Salem v. United States Lines Co.,
    370 U.S. 31 (1962)...............................................................................34

Snead v. SPCA,
    929 A.2d 1169 (Pa. Super. 2007) ........................................................28

Spence v. Bd. Of Education of Christina Sch. Dist.,
    806 F.2d 1198 (3d Cir. 1986) .......................................................44, 45

Stecyk v. Bell Helicopter Textron, Inc.,
    295 F.3d 408 (3d Cir. 2002) .................................................................37

Stoneking v. Bradford Area Sch. Dist.,
    882 F.2d 720 (3d Cir. 1989) .................................................................12

Thompson v. Nason Hosp.,
    591 A.2d 703 (Pa. 1991)......................................................................25

United States ex rel Walker v. Fayette Cty.,
    599 F.2d 573 (3d Cir. 1979) ...........................................10, 18, 20, 22

Univac Dental Co. v. Dentsply Intern., Inc.,
    268 F.R.D. 190 (M.D. Pa. 2010) .........................................................37

Walters v. Mintec/International,
    758 F.2d 73 (3d Cir. 1985) ..................................................................44

<u>Wilburn v. Maritrans GP</u>,
  139 F.3d 350 (3d Cir. 1998) .............................................................34

<u>Williams v. Martin Marietta Alumina, Inc.</u>,
  817 F.2d 1030 (3d Cir. 1987) .........................................................44

<u>Woloszyn v. Cty. of Lawrence</u>,
  396 F.3d 314 (3d Cir. 2005) ........................................................9, 14

<u>Wright v. Cacciutti</u>,
  2015 U.S. Dist. LEXIS 75921 (M.D. Pa. June 11, 2015)............................44, 45


**<u>Statutes</u>**

40 P.S. § 1303.505 .............................................................................27

**Other**

Fed. R. Civ. P. 50(a) ......................................................................... 1
Fed. R. Civ. P. 59(a)(1)(A) ..............................................................30
Fed. R. Evid. 401 ..............................................................................37
Fed. R. Evid 403 ...............................................................................37
Fed. R. Evid. 701 ..............................................................................34
Fed. R. Evid. 702 ..............................................................................34
Fed. R. Evid. 801(c) ..........................................................................40
Fed. R. Evid. 803 ..............................................................................40

# I.  RELEVANT PROCEDURAL HISTORY

This action arises from the incarceration of Mumun Barbaros ("Barbaros") at the Monroe County Correctional Facility ("MCCF") from March 18, 2009, until March 22, 2009.  Plaintiffs pursued two causes of action through verdict, which included a cause of action premised upon an alleged violation of Barbaros' Fourteenth Amendment rights and a pendant claim for professional negligence which included claims for both compensatory and punitive damages.

A jury trial was held from September 6, 2016, through the jury returning a verdict on September 15, 2016.  At the close of Plaintiffs' case, the PrimeCare Defendants made an oral Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(a).  Judge Mariani deferred ruling on the oral Motion until the PrimeCare Medical Defendants filed a post-trial motion for judgment as a matter of law if the same were to become necessary.  The PrimeCare Defendants orally renewed on the record their Motion for Judgment as a Matter of Law without argument at the close of their case-in-chief, and Judge Mariani deferred ruling on this second oral Motion.  Plaintiffs dismissed their claim for punitive damages against all parties except PrimeCare prior to closing arguments and the jury charge.

The jury returned a verdict finding all of the PrimeCare Defendants, except Wendy Johnson, acted with deliberate indifference to Barbaros' serious medical

needs and that the deliberate indifference was a factual cause of harm to Barbaros.

The jury also found all the Defendants liable for professional negligence.  The jury

made an $8,000,000 punitive damages award against PrimeCare.  After the jury

rendered its verdict, the PrimeCare Defendants orally renewed their Motion for

Judgment as a Matter of Law, and filed their Renewed Motion for Judgment as a

Matter of Law or in the alternative, Motion for New Trial or for a Remittitur (Doc.

366).

## II.  STATEMENT OF FACTS

Barbaros entered MCCF at approximately 2:45 a.m., on March 18, 2009, (Def. Exh. 76-0044) and at approximately 3:00 a.m., on March 18, 2009, Nurse Paul James conducted an intake screening of Barbaros.  (Def. Exh. 43-0021 and 76-0044)  During the intake medical screening, Barbaros reported a history of ulcers.  (N.T., 9/7/16, p. 50, lines 10-11)  He also reported that he was taking Trazadone and Prozac. (Def. Exh. 43-0021)  He denied being suicidal.  (Def. Exh. 43-0022)  PrimeCare policy requires all outside medications be confirmed with the pharmacy prior to administration.  (N.T., 9/7/16, p. 137, lines 13-25)  If prescriptions cannot be verified, the inmate is placed on the list to see a medical provider for non-psychiatric medications or the psychiatrist for psychiatric medications.  (N.T., 9/7/16, p. 134, line 20 through p. 135, line 6)

As part of the intake process, Nurse James conducted a Suicide Screening. (Def. Exh. 43-0012)  If an inmate scores "8 points" on the suicide screening, he is placed on suicide watch.  (Def. Exh. 43-0012)  Barbaros' responses resulted in a score of 2-3.  (Def. Exh. 43-0012)  Plaintiffs did not contend at trial that Barbaros was suicidal at the time of his intake.

Following the intake screening, Nurse James was unable to verify Barbaros' medications because of the late hour. (N.T., 9/7/16, p. 51, lines 5-9) Thus, the

responsibility to confirm the medications went to the next shift.  Nurse Patricia

Bauer called the CVS identified by Barbaros as to where he obtained his

medications, and CVS denied filling prescriptions for Barbaros. (N.T., 9/7/16, p.

134, line 20 through p. 135, line 3)  Nurse Bauer's habit, routine and custom was

to also call other local CVS pharmacies when the first pharmacy was unable to

confirm the medication. (N.T., 9/7/16, p. 143, lines 13-22)  After being unable to

confirm the medications with CVS, Nurse Bauer completed a Dispensary Note

which documented she was unable to verify Barbaros' medications.  (Def. Exh. 43-

0004)  Further, Barbaros was placed on the medical provider line due to his ulcers

and a referral was made to "Psych" for evaluation by a mental health clinician.

(Def. Exh. 43-0011)

At trial, Plaintiffs pointed out Barbaros' **first** name only, "Muman," was

spelled differently at different spots in the intake material. Barbaros' last name was

spelled correctly throughout the intake process.  Plaintiffs argued the

misidentification of Barbaros' first name was evidence of an error/deviation from

the standard of care and somehow contributed to CVS' inability to properly verify

Barbaros' medications.  (Def. Exh. 43-0009, 43-0011, 43-0012, 43-0021)  It was

beyond dispute, the CVS records had a first name of "Martin" for Barbaros.  (Def.

Exh. 41-0002-0008)  Therefore, the first name was not the same as what was in the

CVS records, and thus could have had no impact on preventing the medications from being verified.  Moreover, Barbaros' date of birth and Social Security Number were accurate in his chart.  (Def. Exh. 43-0011)  Why CVS could not verify medications with a last name, date of birth and Social Security Number is a mystery; however, the alleged misspelling of Barbaros' first name had no impact on CVS' failure.

On March 19, 2009, Barbaros submitted a Sick Call Request noting he was experiencing headaches, had a stomach ulcer and requested medication for both. (Def. Exh. 43-0026)  Barbaros was seen in response to his Sick Call Request by Nurse Christina Rowe on March 20, 2009, at approximately 10:30 a.m.  He presented with headaches which reportedly started the night before.  Nurse Rowe took Barbaros' vital signs and noted he had an elevated blood pressure.  He was prescribed acetaminophen and educated regarding the causes of headaches. Further, he was instructed to report increasing or worsening symptoms.  (Def. Exh. 43-0019)  Barbaros did not identify any mental health issues or concerns nor did he request any psychiatric medication.  He also did not report any other physical symptoms or complaints.  (Def. Exh. 43-0019; 138-0077, line 22 to 138-0078, line 23).

Nurse Rowe called the on-call provider, Jennifer Mroz, PA-C, due to Barbaros' elevated blood pressure reading.  Ms. Mroz provided a verbal order to prescribe Lopressor, twice per day for 30 days, perform daily blood pressure checks for five days and place Barbaros on the list to see the doctor.  (Def. Exh. 43-0004)  Plaintiffs did not produce any evidence or opinion testimony at trial questioning or contradicting the care ordered by Ms. Mroz.

Following his evaluation by Nurse Rowe, Barbaros went to court where he received additional charges.  Apparently, Barbaros complained to the Judge that he was not getting his psychiatric medications.  Barbaros returned to MCCF at 5:00 p.m.  (Def. Exh. 76-0046; N.T., 9/7/16, p. 168, lines 4-22)

Following Barbaros' return to MCCF, the facility's Health Services Administrator, Wendy Johnson, was notified of Barbaros' complaint regarding his psychiatric medications.  Neither she nor anyone else associated with PrimeCare was notified as to the additional charges filed against Barbaros.  HSA Johnson reviewed Barbaros' chart and noticed that earlier efforts to verify his medications had been unsuccessful.  HSA Johnson tasked Grace Ramos to once again attempt to verify the medications.  (N.T., 9/7/16, p. 169, line 22 through p. 17, line 16)

At approximately 9:40 p.m., Nurse Ramos was able to verify with CVS that Barbaros, under the name Martin Barbaros, had been prescribed Trazadone and

Paxil (not Prozac as initially reported by Barbaros) prior to his incarceration. Nurse Ramos promptly called Dr. Thomas and obtained orders to prescribe Trazadone and Paxil.  (Def. Exh. 43-0006)

On March 21, 2009, Barbaros was evaluated by William Buffton, a mental health professional.  Mr. Buffton noted that Barbaros was timid and subdued but became more relaxed and animated as the interview progressed.  Mr. Buffton referred Barbaros to the psychiatrist with a recommendation to rule out depression and adjustment disorder. Nothing in Barbaros' presentation suggested he was suicidal.  Barbaros did not complain that he was not receiving his medications or request any psychiatric medication.  (Def. Exh. 43-0005)

Barbaros was found unresponsive in his cell at approximately 6:00 a.m., on March 22, 2009.  (Def. Exh. 43-0007)

## III.  ISSUES

A.    ARE THE PRIMECARE DEFENDANTS ENTITLED TO
      JUDGMENT AS A MATTER OF LAW?

B.    ALTERNATIVELY, ARE THE PRIMECARE DEFENDANTS
      ENTITLED TO A NEW TRIAL?

C.    ALTERNATIVELY, ARE THE PRIMECARE DEFENDANTS
      ENTITLED TO A NEW TRIAL ON DAMAGES OR
      REMITTITUR?

      Suggested Answer to All:  Yes.

## IV.  ARGUMENT

### A.    THE PRIMECARE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.

A motion for judgment as a matter of law "should be granted only if, viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011) (quoting, Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996)).  "[A] directed verdict is mandated where the facts and the law will reasonably support only one conclusion." Id. (quoting, McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356, 111 S. Ct. 807 (1991)).

### 1.    The PrimeCare Defendants are entitled to judgment as a matter of law on Plaintiffs' constitutional claim.

The standard for establishing a constitutional claim based upon a failure to provide medical treatment to an inmate is clear under Third Circuit precedent.  To establish a violation of a constitutional right to adequate medical care, an inmate is required to prove (1) that he had a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need.  Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); see also, Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005) (for a claim of deliberate indifference

against a prison official to survive, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.").

In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 105, 97 S. Ct. 285 (1976).  A prison official acts with deliberate indifference only where the official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment."  Rouse, 182 F.3d at 197.

Prison medical authorities are afforded considerable latitude in the diagnosis and treatment of the medical problems of inmate patients.  As the Third Circuit stated long ago, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." United States ex rel. Walker v. Fayette Cty., 599 F.2d 573, 575 n.2 (3d Cir. 1979).  Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment … (which) remains a question of

sound professional judgment.'" <u>Inmates of Allegheny Cty. Jail v. Pierce</u>, 612 F.2d

754, 762 (3d Cir. 1979) citing, <u>Bowring v Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977).

As long as a physician exercises professional judgment his behavior will not

violate a prisoner's constitutional rights.  <u>Brown v. Borough of Chambersburg</u>, 903

F.3d 274, 278 (3d Cir. 1990).

     This long standing precedent was recently reaffirmed by the Third Circuit in

<u>Pearson v. Prison Health Serv.</u>, 2017 U.S. App. LEXIS 4003 (3d Cir. Mar. 7,

2017).  In <u>Pearson</u>, the Third Circuit affirmed summary judgment in favor of four

defendants who provided treatment to the plaintiff for an appendicitis and

subsequent complications leading to bleeding from the plaintiff's penis.  Summary

judgment was only reversed for one defendant who allegedly refused to provide

care.

     To establish deliberate indifference, Plaintiffs must establish the Defendants

had actual knowledge of an excessive risk to Barbaros' health and that they

deliberately ignored that risk.  In <u>Beers-Capitol v. Whetzel</u>, 256 F.3d 120, 133 (3d

Cir. 2001), the Third Circuit held "[t]o be liable on a deliberate indifference claim,

a … prison official must both know of and disregard an excessive risk to inmate

health or safety.  The knowledge element of deliberate indifference is subjective,

not objective knowledge meaning that the official must actually be aware of the

existence of excessive risk; it is not sufficient that the official should have been aware." See also, Pittman v. Cty. of Madison, 746 F.3d 766, 778-79 (7th Cir. 2014).

Plaintiffs also pursued a direct cause of action against PrimeCare at trial. Municipalities and private corporations that contract to provide services cannot be subjected to liability under § 1983 on the basis of *respondeat superior*. See, Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003); see also, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691-94, 98 S. Ct. 2018 (1978) (holding a municipality cannot be liable under § 1983 on a theory of respondeat superior). Instead, in order to hold a private corporation liable under § 1983, a plaintiff must prove he suffered a constitutional deprivation as a result of an official corporate policy or custom. Natale, 318 F.3d at 583-84; see also, Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 404, 117 S. Ct. 1382 (1997); Griggs v. Dauphin Cty. Prison, No. 1:06-0823, 2008 U.S. Dist. LEXIS 47789, 2008 WL 2518090 at *4 (M.D. Pa. June 19, 2008); Miller v. City of Phila., No. 96-3578, 1996 U.S. Dist. LEXIS 17514, 1996 WL 683827 at *4, *10-11 (E.D. Pa. Nov. 21, 1996) (quoting, Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989)). PrimeCare cannot be found liable under a Monell theory if none of the

individual Defendants violated Barbaros' constitutional rights.  See, City of L.A. v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571 (1986).

A private corporation performing a governmental function may be held liable under § 1983 only when the plaintiff demonstrates the private corporation caused the plaintiff's injury through the implementation of a policy or custom. Monell, 436 U.S. at 694.  A policy is an official proclamation or edict while a custom is a practice that is so permanent and well settled as to virtually constitute law.  Beck v. City of Pitt., 89 F.3d 966, 971 (3d Cir. 1996).  The plaintiff must also show that "there is a direct causal link between the [municipal] policy or custom and the alleged constitutional deprivation."  Brown v. Muhlenberg Twp., 269 F.3d 205, 214 (3d Cir. 2001) (quoting, City of Canton v. Harris, 489 U.S. 378, 385, 109 S. Ct. 1197 (1989)).  It must be the policymaker's actions that "directly caused constitutional harm."  Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 175 (3d Cir. 2001).

The failure to properly train employees can constitute a custom or policy for purposes of § 1983 liability, only if such failure is tantamount "to deliberate indifference to the rights of persons with whom the [employees] come into contact."  City of Canton v. Harris, 489 U.S. 378, 388 (1989).

13

> Only where a municipality's failure to train its employees in relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983.... Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality - a "policy" as defined by our prior cases - can a city be liable for such a failure under § 1983.

Id. at 389.  Therefore, "not all failures or lapses in training will support liability under § 1983."  Woloszyn, 396 F.3d at 325.

A failure to train, discipline or control can only form the basis for § 1983 liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998).

Initially, it must be stated the PrimeCare Defendants do not concede Barbaros suffered a serious medical condition.  He was a generally healthy male who received mental health medications from his family physician.  There was nothing about his history which indicated he suffered from a serious medical condition or that any of the PrimeCare Defendants should have been subjectively aware of any serious medical condition.  Further, as stated below, the evidence at

trial was insufficient to support a finding of deliberate indifference against the PrimeCare Defendants.

        a.    <u>Paul James.</u>

The evidence at trial was that Nurse James performed the medical intake of Barbaros upon his admission to MCCF.  Mr. James obtained Barbaros' account of the medication he was taking as well as a medical history.  The medical history and associated suicide screening did not disclose any prior attempts at suicide or self-harm, any prior mental health hospitalizations and did not disclose any preset suicide ideation.  Nurse James put into motion the process for Barbaros' medications to be verified.  Nurse James also placed Barbaros on the provider line to be evaluated for his history of ulcers.

Plaintiffs' nursing expert, Katheryn Wild, testified at trial that the purpose of the intake is to develop a medical history, identify medications and place the inmate in line for follow-up care (NT. 9/8/16, p. 260, line 15 through p. 261, line 2).  Nurse Wild testified that Nurse James' intake accomplished those goals (N.T., 9/8/16, p. 267, line 15 through p. 268, line 21).  Thus, it is submitted that as a matter of law, Plaintiffs cannot demonstrate Nurse James exhibited a deliberate indifference to a serious medical condition where his only purpose in the treatment of Barbaros was accomplished.

There were potentially minor discrepancies in the completion of the intake forms.  Specifically, Nurse James did not document when Barbaros took his last dose of medications.  It is possible that Barbaros could not provide an answer to be documented.  Nurse James did spell Barbaros' first name different ways on the forms and noted Barbaros was taking the anti-depressant Prozac, when it was later determined Barbaros was taking the anti-depressant Paxil.  Again, it is unclear whether Mr. James noted the incorrect anti-depressant or if Barbaros was mistaken.

None of these discrepancies delayed Barbaros receiving medication.  Nurse Wild agreed Mr. James had documented the correct last name and date of birth.  It is undisputed the Social Security Number was accurate.  (N.T., 9/8/16, p. 262, lines 13-24).  The pharmacy records had a first name of Martin for Barbaros.  Thus, any error in the documentation of Barbaros' name had no role in delaying the verification of medications.  Further, the failure to note the last dose of medication in no way adversely impacted the medical treatment received by Barbaros.  None of these discrepancies constitutes deliberate indifference.  Mr. James did not refuse to treat Barbaros, delay his treatment, or prevent him from obtaining treatment.  Any discrepancies did not cause any harm to Barbaros.  As such, they do not even constitute negligence, much less a constitution violation.  Therefore, this Court

16

should enter a judgment as a matter of law in favor of Nurse James concerning

Plaintiffs' constitutional claim.

    b.  <u>Patricia Bauer.</u>

   Nurse Patricia Bauer had no treatment responsibilities for Barbaros. Nurse

Bauer was provided the task of attempting to verify Barbaros' medications at CVS

in Mt. Home.  She attempted to verify the medications by calling the pharmacy,

which denied Barbaros was a patient.  Nurse Bauer then placed Barbaros on the

psychiatrist line to be evaluated.  Nurse Bauer's actions were consistent with

PrimeCare's written policy concerning medication verification.  Nurse Wild agreed

the PrimeCare policy was consistent with national standards (N.T., 9/8/16, p. 268,

line 22 through p. 269, line 6).  Thus, Nurse Bauer acted consistent with an

appropriate policy and put into place a plan where Barbaros would be evaluated in

no later than three days.

   Thus, the evidence at trial was Nurse Bauer attempted to accomplish the task

she was assigned consistent with PrimeCare policy.  Clearly, this evidence does

not prove deliberate indifference.  She did not refuse to treat Barbaros, delay his

treatment or prevent him from obtaining treatment.  To the contrary, it shows

Nurse Bauer was a conscientious nurse who did her job to the best of her ability

and consistent with PrimeCare policy.

Plaintiffs' argument is Nurse Bauer should have gone above and beyond the PrimeCare policy and as such above and beyond nationally accepted medication verification practice and procedures.  However, as the Third Circuit established long ago, "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." <u>United States ex rel. Walker v. Fayette Cnty.</u>, 599 F.2d 573, 575 n.2 (3d Cir. 1979).  Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment[.]'" <u>Inmates of Allegheny Cty. Jail v. Pierce</u>, 612 F.2d 754, 762 (3d Cir. 1979) citing, <u>Bowring v Godwin</u>, 551 F.2d 44, 48 (4th Cir. 1977); <u>see also</u>, <u>Pearson v. Prison Health Serv.</u>, 348 Fed. Appx. 722 (3d Cir. 2016)

In this case, Nurse Bauer utilized her best judgment in following PrimeCare policy and in placing Barbaros on the line to see a psychiatrist for further care.  The jury's finding of deliberate indifference as to Nurse Bauer is against clearly-established precedent and is unsupported by any legally sufficient evidentiary basis.  Therefore, This Court should enter a judgment as a matter of law in favor of Nurse Bauer concerning Plaintiffs' constitutional claim.

c.     Christina Rowe.

On Friday, March 20, 2009, Christina Rowe received the sick call slip

Barbaros completed on Thursday, March 19, 2009, wherein he indicated he had a

headache and previously received medication for an ulcer.  There was nothing on

the sick call slip about not receiving psychotropic medications or needing any

mental health services.

That day Nurse Rowe evaluated Barbaros taking a history and obtaining

vital signs.  There was no complaint by Barbaros about failing to receive any anti-

depressants.  Barbaros' blood pressure was elevated.  Plaintiffs' expert Nurse Wild

agreed a headache can occur as a result of an elevated blood pressure.  (N.T.,

9/8/16, p. 273, lines 19-22)

Based upon the elevated blood pressure, Nurse Rowe took action by calling

Jennifer Mroz, PA-C who ordered blood pressure checks and medication.   There

was no criticism of PA Mroz at trial.  Nurse Rowe's actions are completely

inconsistent with a finding of deliberate indifference.  She did not refuse to treat

Barbaros, delay his treatment or prevent him from obtaining treatment.  To the

contrary, she obtained a history of Barbaros' complaints, did an assessment which

included the taking of vital signs and called a provider to obtain orders to address

Barbaros' symptoms.

Again, this assertion that medical personnel should have done more is insufficient to support a constitutional claim of deliberate indifference.  See, United States ex rel Walker v. Fayette Cty.; Inmates of Allegheny Cty v. Pierce; and Pearson v. Prison Health Serv., *supra.*)

The jury's finding of deliberate indifference as to Nurse Rowe is against clearly-established precedent and is unsupported by any legally sufficient evidentiary basis.  Therefore, this Court should enter a judgment as a matter of law in favor of Nurse Rowe concerning Plaintiffs' constitutional claim.

   d.  Grace Ramos.

Nurse Ramos was asked by her manager, Wendy Johnson, to make an additional attempt to verify Barbaros' medications, after Barbaros complained at a court hearing he was not receiving his medication.  Other than the apparent complaint made in court, there was no evidence Barbaros ever made any similar complaint to any employee of PrimeCare or any security staff at the facility.

Nurse Ramos called CVS; and this time, CVS confirmed Barbaros as a patient and his prescriptions.  Then, inconsistent to Plaintiffs' contention the PrimeCare nurses did not have appropriate supervision, did exactly what she should do and promptly contacted Dr. Alex Thomas, the on-call psychiatrist, who gave Nurse Ramos the following orders:  Trazadone 100mg per mouth at the hour

20

of sleep and Paxil 30mg per mouth once per day. Nurse Ramos took the order and, even though it was "after hours" and not a normal time for medication administration, she went to Barbaros' cell and provided him with a dose of Trazadone. Having followed the orders of a physician, Nurse Ramos is insulated from any contention she should have done more. See, Pearson, 2017 U.S. App. LEXIS 4003 *21 (3d Cir. Mar. 7, 2017).

It was common for Nurse Ramos to call Dr. Thomas for orders. There was nothing about the phone call which was unusual or atypical. Plaintiffs contended Nurse Ramos failed to provide sufficient information to Dr. Thomas during the phone call. However, Dr. Thomas testified at trial it was his responsibility to have sufficient information before issuing the order and not Nurse Ramos. (N.T., 9/9/16, p. 30, line 25 through p. 31, line 7) Moreover, Dr. Thomas would ask nursing whatever questions were necessary to obtain the background he believed was necessary to issue orders. (N.T., 9/9/16, p. 51, lines 9-21)

Thus, Nurse Ramos was given the task to confirm medication. She did not refuse to treat Barbaros, delay his treatment or prevent him from obtaining treatment. To the contrary, she confirmed the medication, then contacted the appropriate on-call provider to obtain an order for the medication and then administered the medication.

Again, this assertion that medical personnel should have done more is insufficient to support a constitutional claim of deliberate indifference.  See, United States ex rel Walker v. Fayette Cty.; Inmates of Allegheny Cty v. Pierce; and Pearson v. Prison Health Serv. *supra*.)

The jury's finding of deliberate indifference as to Nurse Ramos is against clearly-established precedent and is unsupported by any legally sufficient evidentiary basis.  Therefore, this Court should enter a judgment as a matter of law in favor of Nurse Ramos concerning Plaintiffs' constitutional claim.

        e.      PrimeCare Medical, Inc.

Plaintiffs pursued a direct cause of action against PrimeCare, and the jury found PrimeCare exhibited deliberate indifference to Barbaros' serious medical needs.  Such a finding was entirely unsupported by the evidence at trial.

Initially, as stated above, Plaintiffs cannot demonstrate that any of the individual PrimeCare employees violated Barbaros' constitutional rights. However, even if they could support such a finding, it would be insufficient to support a claim against PrimeCare.  PrimeCare cannot be held liable on the constitutional claim based upon *respondeat superior*.  See, Natale and Monell, *supra*.  Thus, as a preliminary matter, the jury's finding of deliberate indifference as to PrimeCare is against clearly-established precedent. See, City of L.A. v.

22

Heller, 475 U.S. 796, 799 (1986).  Therefore, this Court should enter a judgment as a matter of law in favor of PrimeCare concerning Plaintiffs' constitutional claim.

Additionally, there was no evidence PrimeCare's policies and procedures were inadequate.  To the contrary, Nurse Wild agreed PrimeCare's policies and procedures met national standards (N.T., 9/8/16, p. 250, lines 8-14).  Specifically, Nurse Wild agreed the intake accomplished the requirements of obtaining a history and developing follow-up care (N.T., 9/8/16, p. 267, line 15 through p. 268, line 21).  The sick call procedure provided access to care and Barbaros availed himself of the sick call procedure.  There was no evidence the care provided was untimely.

Nurse Wild did not offer any criticisms of PrimeCare's training.  Additionally, there was no evidence of any training which should have been provided or would have changed the outcome.

Nurse Wild did not offer any criticism of PrimeCare's CQI program.  The purpose of the CQI program is to monitor compliance with national standards.  There was no evidence PrimeCare failed to adhere to the CQI program or failed to address any deficiencies which may have cropped up from time to time.  Thus, the undisputed evidence at trial was that PrimeCare monitored its staff through a CQI program which met national standards.

There was evidence of arguable minor isolated deviations from policy. Specifically, evidence was introduced that Nurse James misspelled Barbaros' first name, may have failed to ask Barbaros when he last took his medications and may have incorrectly identified the anti-depressant prescribed to Barbaros. Nurse Rowe testified she did not review Barbaros' chart prior to conducting her thorough and appropriate evaluation of Barbaros on March 20, 2009. However, there was no evidence of a pattern and practice of these types of deviations or that PrimeCare had knowledge of these deviations. An isolated occurrence cannot equate to a constitutional violation.

The uncontroverted evidence establishes Barbaros had access to care and the sick call process met national standards. Every request for treatment by Barbaros was responded to in a timely fashion. Barbaros received a mental health evaluation by Mr. Buffton per PrimeCare policy and not as a request for treatment.

The evidence at trial was that PrimeCare policies, procedures, training and CQI all met national standards. There was no evidence of a pattern or practice of policy, procedure or practice violations. Moreover, there was no policy, procedure or practice put into place by PrimeCare that caused any harm to Barbaros. To the contrary, Barbaros received more care during his few short days at MCCF than he received prior to his arrest.

The jury's finding of deliberate indifference as to PrimeCare is against clearly-established precedent and is unsupported by any legally sufficient evidentiary basis. Therefore, this Court should enter a judgment as a matter of law in favor of PrimeCare concerning Plaintiffs' constitutional claim.

### B.   THE PRIMECARE DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW ON PLAINTIFFS' NEGLIGENCE CLAIM.

At the close of Plaintiffs' case-in-chief, the PrimeCare Defendants moved for Judgment as a Matter of Law. The Court deferred ruling on the Motion.

Plaintiffs pursued a theory of corporate negligence against PrimeCare. "A hospital owes a duty to its patients to: use reasonable care to ensure its facilities and equipment are adequate; select and retain competent physicians; oversee patient care of its employees; and enforce rules and policies to ensure adequate care." Thompson v. Nason Hosp., 591 A.2d 703, 708 (Pa. 1991). Further, "for a [corporate entity] to be charged with negligence, it is necessary to show the [corporate entity] had actual or constructive notice of the defect or procedures which created the harm." Id.

Here, there was no evidence the PrimeCare medical department at MCCF had inadequate equipment, facilities or non-competent medical providers. Thus, the inquiry must focus upon whether there was sufficient evidence of deficient

oversight of employees and/or enforcement of rules and policies to ensure adequate care.

The evidence was that PrimeCare had policies and procedures which met or exceeded national standards and requirements.  Additionally, the undisputed evidence was that PrimeCare had a CQI process which also met national standards and there was no criticism of how the process was carried out by PrimeCare.  Thus, the undisputed evidence was that PrimeCare's policies and procedures met national standards, and the process to insure employees followed the policies and procedures also met national standards.  At most, the evidence at trial was that there were isolated instances of policy deviations by individual nurses.  Further, none of these minor policy deviations in any way had any impact upon Barbaros choosing to commit suicide and, as such, was not casually related to any harm to Barbaros.  Thus, not only is the evidence insufficient to support a determination of deliberate indifference, it cannot even support a finding of negligence. Consequently, as a matter of law, PrimeCare Defendants cannot be found to be directly negligent in relation to Barbaros' action of taking his own life.

### C.   PRIMECARE IS ENTITLED TO JUDGMENT AS A MATTER OF LAW CONCERNING THE JURY'S AWARD OF PUNITIVE DAMAGES.

The PrimeCare Defendants challenged Plaintiffs' claim for punitive damages pre-trial via a Motion in Limine and at trial.  The Court denied the Motion and permitted Plaintiffs to pursue punitive damages at trial and charged the jury (over objection) on punitive damages.  At trial, Plaintiffs withdrew their claim for punitive damages against all the individuals, as well as for their direct constitutional claim against PrimeCare.  Thus, the only claim for punitive damages was for Plaintiffs' direct cause of action against PrimeCare for negligence.

Section 505 of the Medical Care Availability and Reduction of Error Act ("MCARE Act"), 40 P.S. § 1303.505, governs the imposition of punitive damages from professional negligence causes of action in Pennsylvania. 40 P.S. § 1303.505(a) states "[p]unitive damages may be awarded for conduct that is the result of the health care provider's willful or wanton conduct or reckless indifference to the rights of others.  In assessing punitive damages, the trier of fact can properly consider the character of the health care provider's act, the nature and extent of the harm to the patient that the health care provider caused or intended to cause and the wealth of the health care provider."

Further:

> Punitive damages may be awarded for conduct that is outrageous,
> because of the defendant's evil motive or his reckless indifference to
> the rights of others.  Further, [P]unitive damages are penal in nature
> and are proper only in cases where the defendant's actions are so
> outrageous as to demonstrate willful, wanton or reckless conduct.
> Because punitive damages are intended to punish the tortfeasor for
> outrageous conduct and to deter him and others like him from similar
> conduct in the future, [t]he state of mind of the actor is vital.  The act,
> or the failure to act, must be intentional, reckless or malicious.

Snead v. SPCA, 929 A.2d 1169, 1183 (Pa. Super. 2007), quoting, Hutchison v.
Luddy, 896 A.2d 1260, 1265 (Pa. Super. 2006).

Moreover:

> The only purpose of punitive damages is to deter outrageous conduct.
> It is impossible to deter a person from taking risky action if he is not
> conscious of the risk.  Thus, in Feld v. Merriam, 506 Pa. 383, 485
> A.2d 742 (1984), [our supreme court] addressed the issue of when
> punitive damages are warranted and stressed that, in determining
> whether certain conduct is outrageous, '[t]he state of mind of the actor
> is vital.  The act, or the failure to act, must be intentional, reckless or
> malicious.'  Similarly, Section 500 of the Restatement explains that
> 'reckless indifference to the rights of other and conscious action in
> deliberate disregard of them…may provide the necessary state of
> mind to justify punitive damages.'

Id.

Contrary to that award, there was no evidence of intentional, reckless or

malicious conduct on the part of PrimeCare nor was there evidence of deliberate

indifference exhibited towards Barbaros.  The correctional experts all agreed

PrimeCare's policies and procedures met national standards.  The correctional

28

experts all agreed PrimeCare's training and CQI programs met national standards. The correctional experts agreed Barbaros had access to care and the ability to access care met national standards. Barbaros received care which included nursing evaluations, a mental health evaluation and medication. All of the care was provided timely and based upon the healthcare providers' best judgment.

There was no evidence of a pattern or practice of problems concerning the provision of medical care. To the contrary, the alleged deviations which were committed by the nursing staff all appear to be isolated instances and had no direct correlation to the suicide of Barbaros. Despite the arguments made by the Plaintiffs, the evidence does not bear out that the medical department was not sufficiently supervised or that PrimeCare in any way violated Pennsylvania nursing regulations. It was undisputed that the medical department at MCCF was accredited by National Commission on Correctional Health Care (NCCHC) which is the national leader in establishing standards for the provision of medical care in correctional settings. The NCCHC would not accredit MCCF if it was being managed in contravention of Pennsylvania law.

Further, the jury was improperly prejudiced by Plaintiffs' argument that PrimeCare was violating Pennsylvania law. This Court can correct this prejudice in part by removing the punitive damages award.

29

Additionally, every one of the individual healthcare providers took steps to respond to Barbaros' healthcare needs.  This included getting a history of treatment and medications, verifying the medications and obtaining orders for the medications and providing evaluations by both nursing and mental health staff.  At no time was any request for treatment ignored.  To the contrary, at every step, Barbaros received care.

The jury's award of punitive damages is against clearly-established precedent and is unsupported by any legally sufficient evidentiary basis. Therefore, this Court should enter a judgment as a matter of law in favor of PrimeCare concerning Plaintiffs' award of punitive damages.

### D.    THE PRIMECARE DEFENDANTS ARE ENTITLED TO A NEW TRIAL.

Fed. R. Civ. P. 59(a)(1)(A) permits the trial court to order a new trial after a jury trial.  "A new trial may be granted where the verdict is contrary to the great weight of the evidence; that is, 'where a miscarriage of justice would result if the verdict were to stand.'"  Pryer v. C.O. 3 Slavic, 251 F.3d 448, 453 (3d Cir. 2001) (quoting, Olefins Trading, Inc. v. Han Yang Chem. Corp., 9 F.3d 282, 289 (3d Cir. 1993)).  A new trial may also be granted where "the damages are excessive" or "the trial was not fair to the party moving," and a motion for new trial "may raise questions of law arising out of alleged substantial errors in admission or rejection

30

of evidence or instructions to the jury." <u>Montgomery Ward & Co. v. Duncan</u>, 311

U.S. 243, 251 (1940).

When analyzing a motion for a new trial in <u>Borrell v. Bloomsburg Univ.</u>,

2016 U.S. District LEXIS 127026 (M.D. Pa. 2016), the Honorable A. Richard

Caputo recently stated:

> The court may, on motion, grant a new trial on all or some of the
> issues… after a jury trial, for any reason for which a new trial has
> heretofore been granted in an action at law in federal court…"
> F.R.C.P. 59(a)(1)(A).  The decision whether to grant a new trial
> following a jury verdict is within the sound discretion of the trial
> court.  <u>See</u> <u>Allied Chem. Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 36, 101
> S.Ct. 188, 66 L. Ed. 2d 193 (1980); <u>Blancha v. Raymark Indus.</u>, 972
> F.2d 507,512 (3rd Cir. 1992).  Courts have granted motions for a new
> trial where: (1) there is a significant error of law, to the prejudice of
> the moving party; (2) the verdict is against the weight of the evidence;
> (3) the size of the verdict is against the weight of the evidence; or (4)
> counsel engaged in improper conduct that had a prejudicial effect on
> the jury.  <u>Todd v. Luzerne Cnty. Children & Youth Servs.</u>, No. 04-
> 2637, 2011 U.S. Dist. LEXIS 23008, 2011 WL 841429 at *2 (M.D.
> Pa. Mar. 8, 2011) (citing <u>Maylie v. Nat'l R.R. Passenger Corp.</u>, 791
> F.Supp. 477,480 (E.D. Pa. 1992), aff'd 983 F.2d 1051 (3rd Cir. 1992).
> A new trial may also be warranted based 'upon [a] showing that the
> jury verdict resulted from passion or prejudice." <u>Evans v. Port
> Authority of New York and New Jersey</u>, 273 F.3d 346,352 (3rd Cir
> 2001)(citations and internal quotations omitted).  But, "where the
> evidence is in conflict, and subject to two or more interpretations, the
> trial judge should be reluctant to grant a new trial." <u>See</u> <u>Klein v.
> Hollings</u>, 992 F.2d 1285, 1295 (3rd Cir. 1993)(citation omitted).  "This
> limit upon the district court's power to grant a new trial seeks to
> ensure that a district court does not substitute its judgment of the facts
> and the credibility of the witnesses for that of the jury." <u>Delli Santi v.
> CAN Ins. Cos.</u>, 88 F.3d 192,201 (3rd Cir. 1996) (quoting <u>Fineman v.
> Armstrong World Indus., Inc.</u>, 980 F.3d 171,211 (3rd Cir. 1992).

>Thus, the Third Circuit has indicated that "a District Court reviewing
>a jury verdict has an 'obligation... to uphold the jury's award if there
>exists a reasonable basis to do so." <u>Evans</u>, 273 F.3d at 351-352
>(quoting <u>Motter v. Everest & Jennings, Inc.</u>, 883 F.2d 12231230 (3rd
>Cir. 1989).

<u>Id.</u>, at *4

1.   <u>The PrimeCare Defendants are entitled to a new trial, because
     the Court erred in permitting questioning and argument
     concerning Pennsylvania nursing law and where the Court
     provided a negligence *per se* charge concerning Pennsylvania
     nursing law where Plaintiffs provided no expert testimony that
     PrimeCare violated Pennsylvania nursing law.</u>

Todd Haskins was called for cross-examination by Plaintiffs (N.T., 9/8/16,

pp. 91-194).  Mr. Haskins was asked a line of questions, beginning at N.T. 140

through N.T. 165, concerning nursing regulations[1] contained in the Pennsylvania

Code.  Plaintiffs used Mr. Haskins as a vehicle to publish nursing regulations to the

jury.  It was also clear from the questioning, and later argument, that Plaintiffs

contended PrimeCare violated Pennsylvania nursing regulations concerning the

supervision of its nursing staff at MCCF.  However, at no point did Mr. Haskins

concede there was any violation of Pennsylvania nursing regulations by PrimeCare

or its nurse employees.

---

[1] Repeatedly incorrectly identified as law or statute by Plaintiffs' counsel during
the questioning.

32

Plaintiffs' nursing expert Kathy Wild never addressed the Pennsylvania Code or any aspects of Pennsylvania law in her testimony.  At no time did Kathy Wild, or Dr. Breggin for that matter, ever state PrimeCare violated Pennsylvania law concerning the supervision of its nursing staff.  Further, the Plaintiffs' counsel improperly blurred any issued by failing to acknowledge a difference between administrative supervision and clinical supervision.  The only person throughout the entire two week trial who ever made that assertion was Plaintiffs' counsel through his questioning of Mr. Haskins and his argument to the jury.  However, at no time did any witness ever state there was a violation of Pennsylvania nursing law.

Plaintiffs requested specific language from the Pennsylvania Code concerning psychologists and nursing, as well as a negligence *per se* charge for the jury (9/14/16, N.T. 83-91).  PrimeCare objected to the proposed language offered by Plaintiffs, because Plaintiffs did not present any expert evidence that Pennsylvania law was violated and that it would be speculation for the jury to determine if Pennsylvania law was violated without the guidance of expert testimony. (N.T., 9/14/16, p. 83, line 17 through p. 84, line 7; and p. 88, line 19 through p. 91, line 18).

The Court ultimately ruled the jury would be given the definition of practical nursing and that the jury be given a negligence per se charge (9/14/16, N.T. 91/19-24).  The Court refused to provide any definition from the Pennsylvania Code concerning a psychologist (N.T., 9/14/16, p. 91, lines 6-11).  Furthermore, there was no evidence as to the definition or type of supervision (direct versus indirect, clinical versus administrative).

Federal courts recognize plaintiffs are often required to substantiate their claims with expert evidence when the facts and concepts of a case are beyond a layperson's understanding.  Fed. R. Evid. 702; see also, Wilburn v. Maritrans GP, 139 F.3d 350, 359 (3d Cir. 1998) (citing, Salem v. United States Lines Co., 370 U.S. 31, 35 (1962)).  Stated differently, expert evidence is needed to satisfy the plaintiff's burden of proof when the primary facts cannot be accurately and intelligently described to the jury or, alternatively, the jury is incapable ". . . of comprehending primary facts **and drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation** . . ."  Wilburn, 139 F.3d at 359 (quoting, Salem, 370 U.S. at 35) (emphasis added); Fed. R. Evid. 701 and 702.

Whether nursing regulations were violated is a question outside the scope of knowledge of an average lay person, just as the psychology regulations are outside

the scope of knowledge of an average lay person.  Nursing is a specialized

profession which is uncommon to a layperson.  There was no testimony elicited

from Plaintiffs' experts, or any other witness, that Pennsylvania law was violated.

There was no evidence introduced regarding how any purported regulatory

violation had a causal connection to Barbaros' intentional act of taking his own

life.  Despite providing the jury with the regulatory definition of practice nursing,

there was no evidence what this definition means.  Yet, the jury was permitted to

speculate, with no evidence of record and no guidance from an appropriately

trained professional, as to the applicability of the nursing regulations, whether

there was negligence *per se* based upon the nursing regulations and whether the

negligence *per se* was a casual factor in Barbaros' intentional act of taking his own

life.

   The Court erred in permitting the jury to speculate as to whether the nursing

regulations were violated.  The Court correctly prevented speculation as to the

psychology regulations.  It should have also prevented the same impermissible

speculation in relation to the nursing regulations.  This error caused significant

prejudice to PrimeCare as borne out by the jury finding PrimeCare primarily liable

in its verdict and apportionment of responsibility.  Moreover, the imposition of

punitive damages most likely flowed from Plaintiffs' argument PrimeCare violated

Pennsylvania nursing law; yet, not one witness ever stated Pennsylvania nursing law was violated.  Thus, the entire trial was tainted by the Court's error in permitting the above referenced questioning of Mr. Haskins, and the charge of the jury. The only cure for the prejudice suffered by the PrimeCare Defendants is a new trial.

>    2.    The Court made additional erroneous evidentiary rulings which require a new trial.

There were numerous Motions in Limine filed by the parties in advance of trial. These Motions included, inter alia, a joint defense Motion to Permit Evidence Concerning or Reasonably relating to the Criminal Charges Issued against Plaintiffs' Decedent (Doc. 203); a joint Motion to Preclude Testimony of Decedent's Children (Doc. 221); a joint Motion to Preclude Argument that Plaintiffs May Recover Punitive Damages (Doc. 215); a PrimeCare Motion to Preclude Evidence and/or Testimony of the Misspelling of Decedent's Name as Being the Source and Cause of Failure to Verify Medications (Doc. 217); and Plaintiffs' Motion to Preclude any Hearsay Evidence (Doc. 230).

The admission or the exclusion of evidence is within the discretion of the trial court.  Ansell v. Green Acres Constr. Co., 347 F.3d 515 (3d Cir. 2003). Admission of evidence is an abuse of discretion if the trial court's action was arbitrary, fanciful or clearly unreasonable.  An appellate court will not disturb a

trial court's discretion unless no reasonable person would adopt the trial court's

view.  Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408 (3d Cir. 2002).

(a)     The Court erred in precluding evidence of Barbaros'
        criminal charges.

The Court denied the joint defense motion to permit evidence of Barbaros'

criminal charges with Order (Doc. 272) and Opinion (Doc. 271) concluding the

evidence of Barbaros' criminal charges was not relevant.  Alternatively, the Court

found that, even if relevant, the probative value of the evidence was substantially

outweighed by the danger of unfair prejudice (Doc. 271).  The Court abused its

discretion in denying the joint motion.[2]

The Federal Rules of Evidence are "designed to broadly permit fact-finders

to consider the pertinent factual information while searching for the truth."  Univac

Dental Co. v. Dentsply Intern., Inc., 268 F.R.D. 190, 196 (M.D. Pa. 2010).  Fed. R.

Evid. 401 defines "relevant evidence" as "evidence having any tendency to make

the existence of any fact that is of consequence to the determination of the action

more probable or less probable than it would be without the evidence."  However,

Fed. R. Evid. 403 states, "Although relevant, evidence may be excluded if its

---

[2] As addressed in the last section, the Court allowed argument that PrimeCare essentially broke the law as to the nursing regulations despite there being no evidence of such a violation or any charge of such being made by the Nursing Board and yet precluded evidence of the actual charges made and enhanced against Barbaros.

probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence."

It is submitted the evidence of Barbaros' charges was relevant. Specifically, the significant nature of the charges goes to Barbaros' state of mind. The significance of the charges could very well have been the cause in Barbaros choosing to take his life as opposed to the Plaintiffs' theory Barbaros was suffering from SSRI Discontinuation Syndrome (when toxicology evidence established the Paxil was within therapeutic range) which caused the suicide. The crimes were also relevant to impeach Plaintiffs' wage loss claim. This evidence was particularly relevant to counter Plaintiffs' efforts to paint the picture of a successful business and family man, when the additional charges were directly related to Barbaros' effort to burn down his competitor's business due to a failing business. The jury was provided a fictitious picture of reality without the Defendants being able to challenge that picture with evidence which was directly contradictory.

Further, the significantly probative value of this evidence is not substantially outweighed by the danger of unfair prejudice to Plaintiffs. To the contrary, the suicide occurred in a correctional facility. The jury knew Barbaros was charged with crimes. This certainly mitigates any potential prejudice. In determining the

cause of Barbaros' suicide, the jury should have been able to question whether it was caused by missing a couple of doses of medication which remained at therapeutic levels or the fact his charges had been increased thereby creating a situation where Barbaros was going to be separated from his family while incarcerated for an extended period of time.  Therefore, this Court should grant a new trial.

(b)     The Court erred in preventing Defendants from presenting evidence in the form of statements made by Barbaros to correctional officers.

Plaintiffs filed a Motion in Limine to preclude evidence of hearsay (Doc. 230).  Specifically, Plaintiffs sought to preclude evidence of the statement from Barbaros to Correctional Officer Ryan that CO Ryan was a good guy and he would make CO Ryan a pizza upon his release from prison.  This Court granted Plaintiffs' Motion through Order (Doc. 276) and Memorandum Opinion (Doc. 275).  The Court specifically rejected the defense's contention that Barbaros' statement went to his state of mind.  This Court abused its discretion by granting Plaintiffs' Motion to preclude Barbaros' statements.

The Federal Rules of Evidence define hearsay as a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Federal Rule of Evidence 803 provides exceptions to the rule against hearsay. Rule 803 provides:

> The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
>
> (3) *Then-Existing Mental, Emotional or Physical Condition.* A statement of the declarant's then-existing state of mind (such as motive, intent or plan) or emotional, sensory or physical condition (such as mental feeling, pain or bodily health) but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the validity or terms of the declarant's will.

CO Ryan testified during his deposition he had a conversation with Barbaros. Barbaros told him he was a "good guy" and he (Barbaros) would make him a pizza when released from prison. It was anticipated CO Ryan would have testified consistent with his deposition testimony if permitted to do so by the Court. Additionally, PrimeCare expert Dr. Cheryl Wills referenced the conversation between Barbaros and CO Ryan in her expert report. Dr. Wills reached the conclusion this statement, along with other observations over the course of Barbaros' incarceration, demonstrated he was not exhibiting suicidal tendencies prior to his death.

In addition, Dr. Thomas' expert, Dr. Rushing, references the same conversation between CO Ryan and Barbaros as representing forward thinking on the part of Barbaros which leads her to conclude Barbaros was not exhibiting suicidal tendencies prior to his death.

The crux of Plaintiffs' case was the Defendants were deliberately indifferent to serious medical needs of Barbaros.  Plaintiffs assert Barbaros was at a particularly high risk for suicide and demonstrated signs and symptoms which should have prompted attention by the Defendants including placing Barbaros on increased monitoring.

It is submitted the conversation between Barbaros and CO Ryan did not demonstrate a person in extreme distress or someone who was suicidal.  To the contrary, Barbaros' statements were the kind of a forward-thinking individual who was not in any apparent distress.  The Defendants were significantly prejudiced by not being able to present this evidence to the jury for consideration of Barbaros' mindset in the critical timeframe leading up to his suicide.  Therefore, this Court should grant Defendants a new trial.

> (c)     The Court erred in permitting evidence of the misspelling of Barbaros' first name.

PrimeCare Defendants filed a Motion to Preclude Evidence and/or Testimony of the Misspelling of Decedent's Name as Being the Source and Cause

of Failure to Verify Medications (Doc. 217).  This Court denied the Motion

through Order (Doc. 276) and Memorandum Opinion (Doc. 275).  This Court

abused its discretion in denying the Motion.  PrimeCare Defendants incorporate by

reference their argument in Section A(1)(a) above.

(d)    The Court erred in permitting Barbaros' daughter,
       Mumtaz Barbaros, to testify at trial.

Defendants filed a Joint Motion in Limine to preclude any testimony from

Barbaros' children (Doc. 221).  Plaintiffs did not oppose the Motion, but indicated

there would be no such testimony at trial.  However, literally on the Friday before

the start of trial, Plaintiffs identified Mumtaz Barbaros as a trial witness.

The issue was brought before this Court during trial on September 7, 2016.

(N.T., 9/7/16, p. 215, line 8 - p. 218, line 12)  The issue was again addressed by the

Court on September 12, 2016.  (N.T., 9/12/16, p.193, line 2 – p. 196, line 7.)  The

Court permitted Plaintiffs to call Mumtaz Barbaros at trial over the Defendants'

objections.  It is submitted that this Court erred by permitting Mumtaz Barbaros to

testify at trial.

Mumtaz Barbaros was not identified as a trial witness until literally the eve

of trial.  Defendants filed a Motion in Limine to specifically eliminate the

possibility of any surprise testimony from the Barbaros children.  The Motion was

not opposed and there was a representation the children would not testify at trial.

42

It is not feasible to conduct any sort of discovery into what Mumtaz Barbaros was going to say when she was not identified until trial.  It is simply not enough to take a deposition to elicit what the testimony may be.  It is also necessary to have time to obtain evidence to potentially impeach the testimony.  The late disclosure of this witness prejudiced the Defendants.

Defendants did everything in their power to avoid surprise testimony; yet Plaintiffs were permitted to present the testimony anyway.  This Court erred in permitting Mumtaz Barbaros to testify at trial, and the Court should award Defendants a new trial.

3.    <u>The PrimeCare Defendants are entitled to a new trial, because the jury's verdict was against the weight of the evidence.</u>

The jury's verdict was against the weight of the evidence as articulated in Section A of this Brief.  The arguments asserted in Section A are incorporated by reference.  Therefore, if this Court does not enter a judgment as a matter of law, the Court should order a new trial, because the jury's verdict was against the weight of the evidence.

**C.     ALTERNATIVELY, THE PRIMECARE DEFENDANTS
ARE ENTITLED TO A NEW TRIAL ON DAMAGES OR
REMITTITUR.**

As argued above, the PrimeCare Defendants are entitled to a JMOL or a new

trial.  However, if this Court denies these Motions, the Court should grant the

PrimeCare Defendants a new trial or remittitur.

"'[A] district court should be alert to its responsibility to see that jury awards

do not extend beyond all reasonable bounds' where, in the case at issue, there was

'no rational basis in the . . . record for the amount of the jury verdicts' and the

award for damages was 'purely speculative.'" Wright v. Cacciutti, 2015 U.S. Dist.

LEXIS 75921 at *60 (M.D. Pa. June 11, 2015) (Mariani, J) (quoting Walters v.

Mintec/International, 758 F.2d 73, 80, 81-82 (3d Cir. 1985).  As such a new trial or

remittitur is appropriate where "the verdict is so grossly excessive as to shock the

judicial conscience."  Id. (quoting, Williams v. Martin Marietta Alumina, Inc., 817

F.2d 1030, 1038 (3d Cir. 1987)).  "Where [an] award is grossly excessive in

relation to a plaintiff's injury, the award will not be permitted to stand.  Id.

(quoting, Williams, 817 F.2d at 1041); see also, Spence v. Bd. of Educ. of

Christina Sch. Dist., 806 F.2d 1198, 1201 (3d Cir. 1986).

As this Court has explained,

The rationalization for, and use of, the remittitur is well established as
a device employed when the trial judge finds that a decision of the

> jury is clearly unsupported and/or excessive. <u>Kazan v. Wolinski</u>, 721
> F.2d 911 (3d Cir. 1983); <u>Keystone Floor Products Co., Inc. v. Seattle</u>
> <u>Manufacturing Co.</u>, 432 F.Supp. 869 (E.D. Pa. 1977). Its use clearly
> falls within the discretion of the trial judge, whose decision cannot be
> disturbed by [the Circuit] court absent a manifest abuse of discretion.
> <u>Murray v. Fairbanks Morse</u>, 610 F.2d 149, 16 V.I. 647 (3d Cir. 1979);
> <u>Edynak v. Atlantic Shipping, Inc. CIE. Chambon</u>, 562 F.2d 215 (3d
> Cir. 1977). The district judge is in the best position to evaluate the
> evidence presented and determine whether or not the jury has come to
> a rationally based conclusion. <u>Murray</u>, 610 F.2d at 152-53.

<u>Wright</u>, 2015 U.S. Dist. LEXIS 75921, at *61 (quoting, <u>Spence</u>, 806 F.2d at 1201).

Concerning punitive damages, see Section C above for when punitive damages may be awarded.  The jury awarded $8 million dollars and awarded $1,057,344 for the federal deliberate indifference cause of action.  Concerning compensatory damages, the jury awarded $2 million for the wrongful death damages and $800,000 for the survival damages.

Both the punitive and the compensatory damages awards in this case were grossly excessive and should shock the judicial conscience.

The PrimeCare Defendants incorporate by reference their argument in Section C above as to why the punitive damages award was grossly excessive. Therefore, this Court should enter a remittitur or grant a new trial.

In terms of the wrongful death claim, the evidence at trial was that Barbaros' business was not producing much income as evidenced on the business tax returns. In addition, Barbaros' children were educated in Bulgaria and as such, spent much

45

of their time away from him since he primarily resided in the United States.  Mrs. Barbaros spent anywhere from five to seven months per year in Bulgaria as well. Thus, the amount of time Barbaros would have been able to provide guidance, tutelage, support, etc. for his family was limited.  Additionally, the financial support he was providing to his family was also limited as demonstrated by the tax returns.  The loss of a spouse and father is certainly tragic.  However, the jury's award of $2 million for the loss of a father who spent most of his time away from his wife and children and whose financial support was modest, at best is grossly excessive.  Therefore, this Court should enter a remittitur or grant a new trial.

In terms of the survival claim, the evidence at trial was Barbaros would have been unconscious within four to seven minutes after consuming the remnants of his shredded shirt (N.T., 9/9/16, p. 187, lines 6-10).  Any conscious pain and suffering his actions cause would have ended in a short timeframe.  To substantiate the award, the jury would have had to award between $100,000 and $200,000 for every minute of self-induced conscious pain and suffering.  Such an award is grossly excessive.  Therefore, this Court should enter a remittitur or grant a new trial.

814576

## CERTIFICATE OF SERVICE

I hereby certify on the 15th day of March, 2017, that the *foregoing PrimeCare Defendants' Brief in Support of Renewed Motion For Judgment As A Matter of Law, or In the Alternative, Motion For a New Trial or For a Remittitur Pursuant To Federal Rules Of Civil Procedure 50 And 59* was electronically filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Brian S. Chacker, Esquire
Gay, Chacker & Mittin
1731 Spring Garden Street
Philadelphia, PA  19130-3915
bchacker@gaychackermittin.net
*Counsel for Plaintiffs*

John R. Hill, Esquire
The Perry Law Firm, LLC
87 South Commerce Way, Suite 740
Bethlehem, PA  18017
jrh@theperrylawfirm.com
*Counsel for Dr. Alex Thomas*

JOHNSON, DUFFIE, STEWART & WEIDNER

By:    s/John R. Ninosky
         John R. Ninosky